**EXHIBIT A**

FORM PA
UNITED STATES COPYRIGHT OFFICE
REGISTRATION NUMBER

PA 158-772

EFFECTIVE DATE OF REGISTRATION

Dec. 27 1982

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*Dixie Rease*

REGISTER OF COPYRIGHTS
United States of America

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**

BILLIE JEAN contained on phonorecord by MICHAEL JACKSON "THRILLER" #QE 38112

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions

WORDS & MUSIC

**NAME OF AUTHOR ▼**

a MICHAEL JACKSON

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶ U.S.A.

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No
Pseudonymous?    ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

WORDS & MUSIC

**NAME OF AUTHOR ▼**

b

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No
Pseudonymous?    ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

c

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes ☐ No
Pseudonymous?    ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1982 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ November   Day ▶ 22   Year ▶ 82
Nation ▶ U.S.A.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼

MIJAC MUSIC
9200 Sunset Blvd, Suite 222
Los Angeles, Ca 90069

APPLICATION RECEIVED
DEC 27 82

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 27 82

REMITTANCE NUMBER AND DATE

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

by assignment

PA 158-772

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

DEPOSIT ACCOUNT   If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Account Number ▼

WARNER BROS. MUSIC

CORRESPONDENCE   Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

WARNER BROS. MUSIC

9200 Sunset Boulevard, Suite #222

Los Angeles, California 90069

CERTIFICATION   I, the undersigned, hereby certify that I am the

authorized agent of   WARNER MUSIC

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼   If this is a published work, this date must be the same as or later than the date of publication given in space 3.

CATHY NOLAN   date ▶   December 16, 1982

Handwritten signature (X) ▼

WARNER BROS. MUSIC

9200 Sunset Boulevard, Suite #222

Los Angeles, California 90069



1982, 1983 MIJAC MUSIC
All Rights Administered by WARNER-TAMERLANE PUBLISHING CORP
All Rights Reserved







0 3 4 8 0 4 4 8 0 0 1

**BMI** AGREEMENT made on _____ November 6, 1996 _____ between BROADCAST MUSIC, INC. ("BMI"), a

New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and

Michael Joe Jackson

an **individual** _____ doing business as _____ MIJAC MUSIC

("Publisher"), whose address is    c/o Warner-Tamerlane Publishing Corp.

10585 Santa Monica Blvd, Los Angeles, CA 90025-4921

## W I T N E S S E T H :

FIRST: The term of this agreement shall be the period from _____ January 1, 1997

to _____ December 31, 2001 _____, and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period or any additional period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such period; **except that if the writer affiliation agreement between BMI and Michael Joe Jackson dated November 6, 1996 shall ***

SECOND: As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD: Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, any part or all the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

FOURTH: Notwithstanding the provision of subparagraph A of paragraph THIRD hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license BMI is given written notice thereof and a copy of the license is supplied to BMI.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from

**\*terminate at any time between December 31, 2001 and December 31, 2002 this agreement shall similarly terminate as of that date.**

Publisher all of the material with respect to such Work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of such statement.

SIXTH: In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

SEVENTH:

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in such Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current foreign performance royalties and shall be in accordance with BMI's then standard practices of payment for such performances.

C. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on Works performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

EIGHTH: In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI, such termination shall not be effective until the close of the calendar quarterly period during which (A) Publisher shall repay such unearned balance of advances, or (B) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances has been fully recouped by BMI.

NINTH:

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph D(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

TENTH:

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed clearance form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D(2) of this paragraph TENTH.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each clearance form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2) At BMI's request:

(a)  To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b)  To obtain and deliver to BMI copies of: unpublished and published Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the Works.

E.  Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

ELEVENTH:  Publisher warrants and represents that:

A.  Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B.  Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

TWELFTH:

A.  Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B.  Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense.  Publisher agrees to cooperate with BMI in all such matters.

C.  In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the Work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

THIRTEENTH:  Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provision of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph THIRTEENTH requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder.  In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder, shall not constitute an infringement of Publisher's Works on BMI's part.

FOURTEENTH:

A.  It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories").  Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate as such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof.  Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B.  Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory.  Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share.  Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

FIFTEENTH:  BMI shall have the right, in its sole discretion, to terminate this agreement if:

A.  Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1)  Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2)  Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permit Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B.  Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C.  Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH:  In the event that during the term of this agreement (I) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (2) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

SEVENTEENTH:  Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall extinguish Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

EIGHTEENTH:  All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows:

Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgement may be entered in New York State Supreme Court or any other court having jurisdiction.

NINETEENTH:  Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI shall be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

TWENTIETH:  Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

TWENTY-FIRST:  This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

TWENTY-SECOND:  In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

TWENTY-THIRD:  This agreement, as of its effective date, cancels and supersedes the agreement between the parties dated ____June 28, 1982____ and all modifications thereof (herein called the "Superseded Agreement"). All Works embraced by the Superseded Agreement shall be deemed embraced by this agreement.

It is agreed that any part of any advances heretofore made to Publisher pursuant to the Superseded Agreement which shall not have been recouped by performances of Works up to the effective date of this agreement shall be deemed to be an advance against all monies which may become payable to Publisher pursuant to this agreement and any extensions or modifications thereof or substitutions therefor.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By _____
        BMI Vice President

MISAC Music,

By X _____
        (Title of Signer)   Owner

EB:dd                                                                                4/984

# CERTIFICATE OF RENEWAL REGISTRATION

**FORM RE**

UNITED STATES COPYRIGHT OFFICE



This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 304 of title 17, United States Code, attests that renewal registration has been made for the work identified below. The information has been made a part of the Copyright Office records.

**REGISTRATION NUMBER**

RE    475 432

**EFFECTIVE DATE OF RENEWAL REGISTRATION**

15 MAR. 1990
(Month)  (Day)  (Year)

*(signature)*

**REGISTER OF COPYRIGHTS**
United States of America

**OFFICIAL SEAL**

---

DO NOT WRITE ABOVE THIS LINE.    FOR COPYRIGHT OFFICE USE ONLY

**① Renewal Claimant(s)**

RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM: (See Instructions)

1  Name Barbara Cooke c/o ABKCO Music, Inc.
Address 1700 Broadway, New York, New York 10019
Claiming as Widow of the Author Sam Cooke
(Use appropriate statement from instructions)

2  Name Linda Womack, Sharon Moore, Paula Jackson, Keith Bolling, Tracey Cooke, Denise Summerville c/o ABKCO Music, Inc. 1700 Broadway New York 10019
Address
Claiming as Children of the deceased Author Sam Cooke
(Use appropriate statement from instructions)

3  Name
Address
Claiming as
(Use appropriate statement from instructions)

**② TITLE OF WORK IN WHICH RENEWAL IS CLAIMED:**

BRING IT ON HOME TO ME

**RENEWABLE MATTER:**

Words and Music

**CONTRIBUTION TO PERIODICAL OR COMPOSITE WORK:**

Title of periodical or composite work:

If a periodical or other serial give: Vol.        No.        Issue Date

**③ Author(s)**

AUTHOR(S) OF RENEWABLE MATTER:

Sam Cooke

**④ Facts of Original Registration**

ORIGINAL REGISTRATION NUMBER:    EP166883

ORIGINAL COPYRIGHT CLAIMANT:    Kags Music Corporation

ORIGINAL DATE OF COPYRIGHT:

• If the original registration for this work was made in published form, give:
DATE OF PUBLICATION  4/17/62
(Month)  (Day)  (Year)

OR

• If the original registration for this work was made in unpublished form, give:
DATE OF REGISTRATION
(Month)  (Day)  (Year)

RE    475 432

EXAMINED BY: KMN

CHECKED BY:

DEPOSIT ACCOUNT FUNDS USED: ☐

RENEWAL APPLICATION RECEIVED:

MAR 15 1990

REMITTANCE NUMBER AND DATE:

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions), give full information about each contribution. If more space is needed, request continuation sheet Form RE/CON.

**5**
Renewal for Group of Works

**1**
Title of Contribution: .............
Title of Periodical: .............
Date of Publication: ............. (Month) (Day) (Year)    Vol..... No..... Issue Date .............
Registration Number: .............

**2**
Title of Contribution: .............
Title of Periodical: .............
Date of Publication: ............. (Month) (Day) (Year)    Vol..... No..... Issue Date .............
Registration Number: .............

**3**
Title of Contribution: .............
Title of Periodical: .............
Date of Publication: ............. (Month) (Day) (Year)    Vol..... No..... Issue Date .............
Registration Number: .............

**4**
Title of Contribution: .............
Title of Periodical: .............
Date of Publication: ............. (Month) (Day) (Year)    Vol..... No..... Issue Date .............
Registration Number: .............

**5**
Title of Contribution: .............
Title of Periodical: .............
Date of Publication: ............. (Month) (Day) (Year)    Vol..... No..... Issue Date .............
Registration Number: .............

**6**
Title of Contribution: .............
Title of Periodical: .............
Date of Publication: ............. (Month) (Day) (Year)    Vol..... No..... Issue Date .............
Registration Number: .............

**7**
Title of Contribution: .............
Title of Periodical: .............
Date of Publication: ............. (Month) (Day) (Year)    Vol..... No..... Issue Date .............
Registration Number: .............

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: ABKCO Music, Inc.
Account Number: DAO 34975

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)
Name: Alisa Ritz c/o ABKCO Music, Inc.
Address: 1700 Broadway (Apt)
New York, New York 10019 (City) (State) (Zip)

**6**
Fee and Correspondence

**CERTIFICATION: I,** the undersigned, hereby certify that I am the: (Check one)
☐ renewal claimant    ☒ duly authorized agent of renewal claimants
(Name of renewal claimant)
of the work identified in this application, and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: DO ✍
Typed or printed name: Alisa Ritz

Date: 3/9/90

**7**
Certification
(Application must be signed)

**MAIL CERTIFICATE TO**

ABKCO MUSIC, INC. (Name)
1700 Broadway (Number, Street and Apartment Number)
New York, New York 10019 (City) (State) (ZIP code)

(Certificate will be mailed in window envelope)

**8**
Address for Return of Certificate

U.S. GOVERNMENT PRINTING OFFICE 1978—261-422/19

Apr. 1978—500,000

Page 3

**FORM E**

# Certificate
# Registration of a Claim to Copyright

In a musical composition the author of which is a citizen or domiciliary of the United
States of America or which was first published in the United States of America

This is To Certify that the statements set forth in this certificate have been made
a part of the records of the Copyright Office. In witness whereof the seal of the
Copyright Office is hereto affixed.

CLASS
**E**

Ep. 166583

*Register of Copyrights
United States of America*

NOT VALID WITHOUT
COPYRIG T OFFICE
IMPRESSION SEAL

**1. Copyright Claimant(s) and Address(es):**

Name .......... **KAGS MUSIC CORPORATION**

Address .......... **6425 Hollywood Blvd., Hollywood 28, California**

Name ..........

Address ..........

**2. Title:** .......... **"BRING IT ON HOME TO ME"**
<br>*(Title of the musical composition)*

**3. Authors:**

Name ......... **Sam Cooke**
<br>*(Legal name following by pseudonym if latter appears on the copies)* ......... Citizenship ..... **USA**
<br>*(Name of country)*

Domiciled in U.S.A. Yes No Address ........ **2048 Ames, Los Angeles, Calif.** Author of ... **words and music**
<br>*(State which; words, music, arrangement, etc.)*

Name .........
<br>*(Legal name following by pseudonym if latter appears on the copies)* ......... Citizenship ..... ...
<br>*(Name of country)*

Domiciled in U.S.A. Yes No Address ........ Author of ...
<br>*(State which; words, music, arrangement, etc.)*

Name .........
<br>*(Legal name following by pseudonym if latter appears on the copies)* ......... Citizenship ..... ...
<br>*(Name of country)*

Domiciled in U.S.A. Yes No Address ........ Author of ...
<br>*(State which; words, music, arrangement, etc.)*

**4. (a) Date of Publication:**

.......... **September 17, 1962**

**(b) Place of Publication:**

.......... **U S A**

**5. (a) Previous Registration or Publication:**

☒ Previous registration          ☐ Previous publication

**(b) New Matter in This Version:**

..........

..........

*Complete all applicable spaces, next page*

and correspondence to:

Send certificate to:

(Type or
print
name and
address)   Name

**KAGS MUSIC CORPORATION**

Address   **6425 Hollywood Blvd.**
(Number and street)

(City)   **Hollywood    28,   California**   (State)

## Information concerning copyright in musical compositions

*When To Use Form E.* Form E is appropriate for most published musical compositions by authors who are U. S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition".* The term "musical composition" includes compositions consisting of music, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

*Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

*Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit for copyright registration should be written in some form of legible notation. If the composition contains words, they should be written at or near beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years and may be renewed for a second 28 year term.

### Unpublished musical compositions

*How To Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington 25, D. C., one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned, so do not send your only copy.

*Procedure To Follow if Work Is Later Published.* If the work is later reproduced in copies and published it is necessary to make a second registration, following the procedure outlined below. To make a new copyright, the copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

*What Is Publication?* Publication, generally, means the sale, placing on sale, or public distribution of copies. Distribution of so-called "professional" copies or records may or may not constitute publication. However, since the law is unsettled between a preliminary distribution and general publication, which is difficult to determine, it is wiser to affix the notice and to mail copyright to copies that are to be circulated before it is cleared.

*How To Secure Copyright in a Published Musical Composition?*
1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 4 of this form.

*Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that

all copies published in the United States contain the correct copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:
1. The word "copyright," the abbreviation "Copr.," or the symbol © use of the symbol © may result in securing rights in countries which are parties to the Universal Copyright Convention.
2. The year date of publication. This is ordinarily the year in which copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should include the year of registration, or, if there is new copyrightable matter in the published version, it should include both dates.
3. The name of the copyright owner (or owners). Example: © John Doe 1961.
Note: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.

FOR COPYRIGHT OFFICE USE ONLY

Application received
SEP 13 1962

One copy received

SEP 13 1962

Fee received

Page

# BRING IT ON HOME TO ME

Words and Music by
SAM COOKE



Copyright © 1962 by Kags Music Corp., 1700 Broadway, New York, N.Y. 10019
This arrangement Copyright © 1975 by Kags Music Corp
International Copyright Secured    Made in U.S.A.    All Rights Reserved



2.  I'll g've you jewl'ry and money too
    But that's not all I'd do for you,
    Bring it to me, bring your sweet lovin'
    Bring it on home to me, yea.
    (Yea) yea (yea) yea (yea).

3.  You know I laughed, when you left,
    But you know I only hurt myself
    Bring it to me, bring your sweet lovin'
    Bring it on home to me, yea.
    (Yea) yea (yea) yea (yea).

4.  You know I'll always be your slave
    'Til I'm dead and buried in my grave.
    Oh bring, bring your sweet lovin'
    Bring it on home to me, yea.
    (Yea) yea (yea) yea (yea).

5.  Same as first verse.

#P6083

**AGREEMENT** made on __April 5, 1984__ between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019 and ABKCO MUSIC, INC.

a __New York corporation__ ~~partnership~~

("Publisher"), whose address is __1700 Broadway__
__New York, New York, 10019__, do

## WITNESSETH:

**FIRST:** The term of this agreement shall be the period from __July 1, 1983__ to __June 30, 1985__ and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period, or any such additional five (5) year period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such term.

**SECOND:** As used in this agreement, the word "works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership or copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

**THIRD:** Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, any part or all of the works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such work publicly by means of radio and television or for archive or audition purposes and not for sale to the public or for synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations.

C. The non-exclusive right to adapt or arrange any part or all of any of the works for performance purposes, and to license others to do so.

**FOURTH:**

A. The rights granted to BMI by subparagraph A of paragraph THIRD hereof shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta, or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for and performed as part of a theatrical or television film, (2) a score originally written for and performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher retains the right to issue non-exclusive licenses for performances of a work or works (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license BMI is given written notice of the titles of the works and the nature of the performances so licensed by Publisher.

**FIFTH:**

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the works in which BMI has performing rights:

(1) For performances of works on broadcasting stations in the United States, its territories and possessions BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

It is acknowledged that BMI licenses the works of its affiliates for performance by non-broadcasting means, but that unless and until such time as feasible methods can be devised for tabulation of and payment for such performances, payment will be based solely on broadcast performances. In the event that during the term of this agreement BMI shall establish a system of separate payment for non-broadcasting performances, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of works outside of the United States, its territories and possessions BMI will pay to Publisher all monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the works after the deduction of BMI's then current handling charge applicable to its affiliated publishers.

(3) In the case of works which, or rights in which, are owned by Publisher jointly with one or more other publishers who have granted performing rights therein to BMI, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the foregoing provisions of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance as to which a direct license as de-

...tified in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publisher or the writer.

SIXTH:  BMI will furnish statements to Publisher at least twice during each year of the term showing the number of performances of the works as computed pursuant to subparagraph A(1) of paragraph FIFTH hereof, and at least once during each year of the term showing the monies received by BMI referred to in subparagraph A(2) of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for advances or amounts due to BMI from Publisher.

SEVENTH:

A.  Nothing in this agreement requires BMI to continue to license the works subsequent to the termination of this agreement. In the event that BMI continues to license any or all of the works, however, BMI shall continue to make payments to Publisher for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights to such works to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails to so inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly on demand. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B.  BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by any of the works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers.

C.  In the event that BMI has reason to believe that Publisher will receive or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the works during a period when such works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI of the amount so paid to Publisher by such other organization or that Publisher has not been so paid. In the event that Publisher has been so paid, the monies payable by BMI to Publisher for such performances during such period shall be reduced by the amount of the payment from such other organization. In the event that Publisher does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such works during such period.

EIGHTH:  In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI, such termination shall not be effective until the close of the calendar quarterly period during which (A) Publisher shall repay such unearned balance of advances, or (B) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances has been fully recouped by BMI.

NINTH:

A.  BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any work which in BMI's opinion (1) is similar to a previously existing composition and might constitute a copyright infringement, or (2) has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition, or (3) is offensive, in bad taste or against public morals, or (4) is not reasonably suitable for performance.

B.  In the case of works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such work from this agreement, or (2) to classify any such work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C.  In the event that any work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such work, to terminate all rights in such work granted to BMI herein and all such rights of BMI in such work shall revert to Publisher thirty (30) days after the date of such notice from Publisher to BMI.

TENTH:

A.  With respect to each of the works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1)  Two copies of a completed clearance sheet in the form supplied by BMI, unless a cue sheet with respect to such work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2)  If such work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other works, such copy need be furnished only if requested by BMI pursuant to subsection (c) of subparagraph D(2) of this paragraph TENTH.

(3)  If such work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, composers, publisher and nature and duration of the use of the work in such film or tape.

B.  Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C.  The submission of each clearance sheet or cue sheet shall constitute a warranty by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the works listed thereon has been granted to or reserved by others except as specifically set forth therein.

D.  Publisher agrees:

(1)  To secure and maintain copyright protection of the works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is

affixed; and to give BMI prompt written notice of the date and number of copyright registration and/or renewal of each work registered in the United States Copyright Office.

 (2) At BMI's request:

  (a) To register each unpublished and published work in the United States Copyright Office pursuant to the Copyright Law of the United States.

  (b) To record in the United States Copyright Office in accordance with the Copyright Law of the United States any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the works.

  (c) To obtain and deliver to BMI copies of: unpublished and published works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any of the documents referred to in sub-section (b) above.

 E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any work shall revert to the writer or the writer's representative, or (2) copyright protection of any work shall terminate.

**ELEVENTH:** Publisher warrants and represents that:

 A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

 B. Except with respect to works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance sheet or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has exclusive performing rights in each of the works by virtue of written grants thereto to Publisher signed by all the authors and composers or other owners of such work.

**TWELFTH:**

 A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any work by BMI or its licensees.

 B. Upon the receipt by any of the parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

 C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

**THIRTEENTH:** Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of the said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit.

**FOURTEENTH:**

 A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (hereinafter called "foreign territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the works in any foreign territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such foreign territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the works in any foreign territory as part of an agreement for the publication, exploitation or representation of such works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

 B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the works are granted for any foreign territory. Such notice shall set forth the title of the work, the country or countries involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the foreign territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any foreign territory.

 C. In the event that BMI transmits to Publisher performance royalties designated as the writer's share of performance royalties earned by any of the works in any foreign territory, Publisher shall promptly pay such royalties to the writer or writers of the works involved. If Publisher is unable for any reason to locate and make payment to any of the writers involved within six (6) months from the date of receipt, the amounts due such writers shall be returned to BMI.

**FIFTEENTH:**

 A. Publisher agrees that Publisher, its agents, employees, representatives or affiliated companies, will not directly or indirectly during the term of this agreement:

  (1) Solicit or accept payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicit or accept manuscripts from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permit Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submit to BMI, as one of the works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B.  Publisher agrees that Publisher, its agents, employees or representatives will not directly or indirectly during the term of this agreement make any effort to ascertain from, or offer any inducement or consideration to, anyone, including but not limited to any broadcasting licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C.  Publisher agrees to notify BMI promptly in writing (1) of any change of firm name of Publisher, and (2) of any change of twenty percent (20%) or more in the ownership thereof.

D.  In the event of the violation of any of the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall have the right, in its sole discretion, to terminate this agreement by giving Publisher at least thirty (30) days' notice by registered or certified mail. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

**SIXTEENTH:** In the event that during the term of this agreement (1) mail addressed to Publisher at the last address furnished by it pursuant to paragraph TWENTIETH hereof shall be returned by the post office, or (2) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (3) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher pursuant to paragraph TWENTIETH hereof and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

**SEVENTEENTH:** Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold absolute title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all works for which clearance sheets shall have theretofore been submitted to BMI and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said works in accordance with the terms and conditions of this agreement.

**EIGHTEENTH:** Any controversy or claim arising out of, or relating to, this agreement or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the Rules of the American Arbitration Association, and judgment upon the award of the arbitrator may be entered in any court having jurisdiction thereof. Such award shall include the fixing of the expenses of the arbitration, including reasonable attorney's fees, which shall be borne by the unsuccessful party.

**NINETEENTH:** Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI shall be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

**TWENTIETH:** Publisher agrees to notify BMI's Department of Performing Rights Administration promptly in writing of any change in its address. Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address so furnished by Publisher.

**TWENTY-FIRST:** This agreement cannot be changed orally and shall be governed and construed pursuant to the laws of the State of New York.

**TWENTY-SECOND:** In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

**TWENTY-THIRD:** This agreement, as of its effective date, cancels and supersedes the agreement between the parties dated __September 11, 197__ and all modifications thereof (herein called the "Superseded Agreement"). All works embraced by the Superseded Agreement shall be deemed embraced by this agreement.

It is agreed that any part of any advances heretofore made to Publisher pursuant to the Superseded Agreement which shall not have been recouped by performances of works up to the effective date of this agreement shall be deemed to be an advance against all monies which may become payable to Publisher pursuant to this agreement and any extensions or modifications thereof or substitutions therefor.

**IN WITNESS WHEREOF,** the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By _____

ABKCO MUSIC, INC.

By _____

(Title of Signer) President



MUSIC INC.
1700 BROADWAY, NEW YORK, N.Y. 10019

TELEPHONE (212) 399-0300
TELEX 234874
TELEFAX (212) 582-9090

WRITER'S DIRECT DIAL NUMBER

ABAUTH6.BMI

BY HAND

October 27, 1988

Mr. Rick Sanjek
BMI
320 West 57 Street
New York, New York  10019

Dear Rick:

Re:  Sam Cooke Catalogue - Renewed Term
     Distribution of Songwriters Share of
     Performance Income - U.S. Only

This letter is to formally advise you that by a series of
agreements with (1) Barbara Cooke, the widow of Sam Cooke and
the sole beneficiary and successor in interest to the Estate
of Sam Cooke, (2) Denise Somerville, and (3) Linda Womack, on
behalf of herself and the other heirs of Sam Cooke, ABKCO
Music Inc. acquired all of the copyright renewal rights in
the musical compositions written in whole or in part by Sam
Cooke, as shown on Exhibit A attached hereto.

The renewal rights acquired by ABKCO Music Inc. include the
renewal rights in and to those certain compositions published
in their original term by Venice Music Inc. and set forth on
Exhibit B (which was excerpted from Exhibit A) attached
hereto.

This letter is to advise you that 100% of the copyright and
100% of the publishers share of performance income on the
Venice Music copyrights (other than "Loveable" where the
percentage ownership is 50%) has been owned by ABKCO from and
after the date when each composition entered the renewal
term.  Accordingly, please amend your records to reflect that
100% (.50% in the case of "Loveable") of the publishers share
of performance income arising on the said compositions
(Exhibit B) should be accounted and paid directly to this
company.

On March 4, 1988 we entered into an agreement with Barbara
Cooke relating to the distribution and payment of the
"songwriters share of performance income" on all compositions
written in whole or in part by Sam Cooke.

Mr. Rick Sanjek
Page Two
October 27, 1988

We are enclosing a letter of direction dated March 4, 1988
addressed to BMI, signed by Barbara Cooke and agreed and
accepted by ABKCO, which sets forth the method of future
accounting and payment of the Sam Cooke songwriters share of
performance income earned in the U.S. only (other than
unpublished, posthumous works).

The adjustments in your accounting should commence with your
distribution for the quarter ending March 31, 1988, as it
relates to the songwriters distribution as well as ABKCO's
right to receive 100% of the publishers share of the "Venice
Music copyrights", as we have claimed such prior amounts
directly from SBK.

Please confirm that you will act upon the instructions
contained herein and in the letter of direction dated March
4, 1988 attached.

Very truly yours,

Allen Klein

/jr
Attachments
cc:  Seymour Bricker, Esq.
     Barbara Cooke
     Peter Howard
     Charlie Koppelman - SBK
     Frances Preston - BMI
     Kenneth Salinsky
     Stuart Simke, Esq.
     Thea Zavin - BMI

**EXHIBIT A**

(To Agreement dated 4ᵗʰ March 1988 between ABKCO Music, Inc. and Barbara Cooke)

SAM COOKE RENEWAL COMPOSITIONS
ORIGINAL PUBLISHER VENICE MUSIC
WRITTEN OR CO-WRITTEN IN 1952

| COMPOSITION | ORIGINAL COPYRIGHT TERM | EXPIRATION OF FIRST PERIOD | RENEWAL DATE COMMENCING |
|---|---|---|---|
| JUST ANOTHER DAY | 1952 | 1980 | 1981 |
| UNTIL JESUS CALLS ME HOME | 1952 | 1980 | 1981 |

SAM COOKE RENEWAL COMPOSITIONS
ORIGINAL PUBLISHER ABKCO MUSIC
WRITTEN OR CO-WRITTEN IN 1962

| COMPOSITION | ORIGINAL COPYRIGHT TERM | EXPIRATION OF FIRST PERIOD | RENEWAL DATE COMMENCING |
|---|---|---|---|
| BABY WE'VE GOT LOVE | 1962 | 1990 | 1991 |
| BRING IT ON HOME TO ME | 1962 | 1990 | 1991 |
| CAMPTOWN TWIST | 1962 | 1990 | 1991 |
| DANCE WHAT YOU WANNA [1] | 1962 | 1990 | 1991 |
| EVERY TIME | 1962 | 1990 | 1991 |
| HAVING A PARTY | 1962 | 1990 | 1991 |
| I'M COMING BACK HOME [2] | 1962 | 1990 | 1991 |
| I'M GONNA FORGET ABOUT YOU | 1962 | 1990 | 1991 |
| MEET ME AT THE TWISTIN' PLACE | 1962 | 1990 | 1991 |
| MOVIN' AND A GROOVIN' [3] | 1962 | 1990 | 1991 |
| NOTHING CAN CHANGE THIS LOVE | 1962 | 1990 | 1991 |
| ONE MORE TIME | 1962 | 1990 | 1991 |
| ROME WASN'T BUILT IN A DAY [4] | 1962 | 1990 | 1991 |
| SAVE YOUR LOVIN' JUST FOR ME | 1962 | 1990 | 1991 |
| SHO' MISS YOU BABY [5] | 1962 | 1990 | 1991 |
| (THE) SMILE [6] | 1962 | 1990 | 1991 |
| SOMEBODY HAVE MERCY | 1962 | 1990 | 1991 |
| SOMEWHERE THERES A GIRL [7] | 1962 | 1990 | 1991 |
| SUGAR DUMPLING | 1962 | 1990 | 1991 |
| TELL ME | 1962 | 1990 | 1991 |
| THEME OF TOMORROW [8] | 1962 | 1990 | 1991 |
| TWISTIN' THE NIGHT AWAY | 1962 | 1990 | 1991 |
| TWISTIN' IN THE KITCHEN WITH DINAH | 1962 | 1990 | 1991 |
| WHAT MAKES THE ENDING SO SAD | 1962 | 1990 | 1991 |
| YOU'RE PICKING THE RIGHT COTTON PATCH TO GET 100 | 1962 | 1990 | 1991 |

[1] CO-WRITTEN BY J.W. ALEXANDER AND R. WHITE
[2] CO-WRITTEN BY R. JORDAN
[3] CO-WRITTEN BY L. RAWLS
[4] CO-WRITTEN BY B. AND B. PRUDHOMME
[5] CO-WRITTEN BY E. LYONS
[6] CO-WRITTEN BY J. BROWN
[7] CO-WRITTEN BY R. ROBINSON
[8] CO-WRITTEN BY J.W. ALEXANDER AND C. WHITE

WP\COOKE\SCH.
11

## ASSIGNMENT OF COPYRIGHTS

In consideration of the sum of One ($1.00) Dollar and other good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned does hereby sell, assign, transfer and set over unto:

> ABKCO MUSIC, INC.
> 1700 Broadway
> New York, New York   10019

its successors and assigns, all of its right, title and interest in and to the copyrights of the following musical compositions which were written by the persons so indicated and all of the rights, titles and interests of the undersigned, vested and contingent therein and thereto for the terms of the copyrights therein, and any and all renewal therein:

| COMPOSITIONS | WRITER(S) | U.S. COPYRIGHT NUMBER |
|---|---|---|
| Above My Head (Music In The Air) | L.Rawls/ J.W.Alexander | EU 681107 |

And all titles attached hereto

Copyright Office
of the
United States
THE LIBRARY OF CONGRESS

THIS IS TO CERTIFY
THAT THE ATTACHED
DOCUMENT WAS RE-
CORDED IN THE COPY-
RIGHT OFFICE ON THE
DATE AND IN THE
PLACE SHOWN BELOW.

THIS CERTIFICATE IS IS-
SUED UNDER THE SEAL
OF THE COPYRIGHT OF-
FICE.

this

of January ,

Register of Copyrights
and
Assistant Librarian
for
Copyright Services

## ASSIGNMENT OF COPYRIGHTS

In consideration of the sum of One ($1.00) Dollar and other good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned does hereby sell, assign, transfer and set over unto:

ABKCO MUSIC, INC.
1700 Broadway
New York, New York 10019

its successors and assigns, all of its right, title and interest in and to the copyrights of the following musical compositions which were written by the persons so indicated and all of the rights, titles and interests of the undersigned, vested and contingent therein and thereto for the terms of the copyrights therein, and any and all renewal therein:

| COMPOSITIONS | WRITER(S) | U.S. COPYRIGHT NUMBER |
|---|---|---|
| Above My Head (Music In The Air) | L.Rawls/ J.W.Alexander | EU 681107 |

And all titles attached hereto

IN WITNESS WHEREOF, the undersigned has caused this Assignment to be duly executed as of the 1st day of January, 1980.

KAGS MUSIC CORP.

001710131002

| COMPOSITIONS | WRITER(S) | U.S. COPYRIGHT NUMBER |
|---|---|---|
| After The Parting The Meeting Is Sweeter | J.W.Alexander/ Z.Samuels | EU 696850 |
| Ain't That Love | F.Smith | EU 773909 |
| All Over This World | Le R.Crume/ J.E.Phelps | EU 837933 |
| Amazing Grace | S.Cooke (Arr.) | EU 788306 |
| Amen | S.Cooke (Arr.) | EU 25008 |
| Angel In My Arms | J.W.Alexander | EU 565841 |
| Annie Is Back | J.W.Alexander/ J.Anderson | EU 824984 |
| Another Saturday Night | S.Cooke | EU 766723 |
| Baby, Baby, Baby | S.Cooke | EU 752746 |
| Baby It's Real | J.W.Alexander | EU 921539 |
| Baby, Lots Of Luck | J.Greek | EU 781810 |
| Baby We've Got Love | S.Cooke | EU 705549 |
| Back In Circulation | M.Rebennack | Not Available |
| Back To You | E.Townshend/ J.W.Alexander | EU 788302 |
| Be True To Yourself | J.Anderson | Not Available |
| Bill Bailey | S.Cooke (Arr.) | Not Available |
| Bitter Dreams | B.Womack | EU 848995 |
| Blastin' Off To The Moon | M.Villaluz/ B.&B.Prudhomme | EU 737092 |
| Bridge Of Tears | J.W.Alexander | EU 571316 |
| Bring It On Home To Me | S.Cooke | EU 719893/EP 166883 |
| Build A House Brand New | J.W.Alexander/ J.Anderson | EU 872006 |
| Bye And Bye | J.W.Alexander/ Z.Samuels | EU 810547 |
| Calico | D.Crume | EU 661144 |
| Camptown Twist | S.Cooke | EU 715231 |
| Chain Gang | S.Cooke | EU 624025/EP 144478/EP 144567 |
| Chalk Line | S.Cooke/ J.Wallace | EU 766212 |
| A Change Is Gonna Come | S.Cooke | EU 816632/EP 276311 |
| Cherrigale | E.Townshend/ J.W.Alexander | EU 654306 |
| Chinese Hully Gully Man | Z.Samuels/ E.Fisher/ M.Douglas | EU 679562 |
| Clap Your Hands | S.Cooke | EU 827130 |
| College After Midnight | J.W.Alexander/ Z.Samuels | EU 733295 |
| Come Back Baby | J.Eden/T.Eden/ H.Lee | EU 933118 |
| Completely Yours | J.W.Alexander | EU 37410 |
| Consider Me | M.Rebennack | Not Available |
| Cool Train | S.Cooke | EU 780817 |
| Cousin Of Mine | S.Cooke | EU 841172/EP 275620 |
| Cupid | S.Cooke | EU 668349/EP 275619 |
| Damper | J.Morisette-aka- E.Lyons | EU 668347 |
| Dance And Let Your Hair Down | S.Cooke | EU 657376 |
| Dance What You Wanna | S.Cooke/C.White/ J.W.Alexander | EU 713674 |
| Darling Come Back Home | C.Womack | EU 752752 |
| Darlin' Why! | J.W.Alexander/ L.Jordan | EU 660109/EU 923890 |
| Darling I Need You Now | J.W.Alexander/ B.Womack | EU 801419 |
| Dat-Da-Dah | H.R.Battiste,Jr. | Not Available |
| Doo Dee | M.J.Shate-aka- | Not Available |