Page 3

# Certificate
## Registration of a Claim to Copyright

In a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United States of America.

This Is To Certify that the statements set forth in this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*

FORM E

REGISTRATION NO.

Eu 665436

CLASS

E

DO NOT WRITE HERE

NOT VALID WITHOUT
COPYRIGHT OFFICE
IMPRESSION SEAL

**1. Copyright Claimant(s) and Address(es):**

Name ...Carlos Santana dba Light Music...

Address ...819 Eddy Street, San Francisco, California 94109...

Name ....................................................

Address .................................................

**2. Title:** Europa (Earth's Cry Heaven's Smile)
(Title of the musical composition)

..........................................................

**3. Authors:**

Name ...Carlos Santana aka Devadip...    Citizen of U.S.A. X Other ........
(Legal name followed by pseudonym if latter appears on the copies)    (Class of U.S. citizen)    (Name of country)

Domiciled in U.S.A. Yes X No ...    Address ...201 11th Street...    Author of ...music...
San Francisco, CA    (State which: words, music, arrangement, etc.)

Name ...Tom Coster...    Citizen of U.S.A. X Other ........
(Legal name followed by pseudonym if latter appears on the copies)    (Class of U.S. citizen)    (Name of country)

Domiciled in U.S.A. Yes X No ...    Address ...201 11th Street...    Author of ...music...
San Francisco, CA    (State which: words, music, arrangement, etc.)

Name .........................    Citizen of U.S.A. .... Other ........
(Legal name followed by pseudonym if latter appears on the copies)    (Class of U.S. citizen)    (Name of country)

Domiciled in U.S.A. Yes ... No ...    Address ........    Author of ........
(State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

.......................................................
(Month)    (Day)    (Year)

**(b) Place of Publication:**

.......................................................
(Name of Country)

**5. Previous Registration or Publication:**

Was work previously registered? Yes ... No ... Date of registration ......... Registration number .........
Was work previously published? Yes ... No ... Date of publication ......... Registration number .........
Is there any substantial NEW MATTER in this version? Yes ... No ... If your answer is "Yes," give a brief general statement of the nature of the NEW MATTER in this version. ....................

.......................................................

→ *Complete all applicable spaces on next page*

EXAMINER

6. Deposit account:

7. Send correspondence to:

Name Michael L. Krassner          Address 819 Eddy Street, San Francisco, CA
                                                                          94109

8. Send certificate to:

(Type or    Name    Light Music c/o Michael L. Krassner
print
name and    Address    819 Eddy Street
address)                                      (Number and street)
                       San Francisco, California 94109
                       (City)                    (State)              (ZIP code)

## Information concerning copyright in musical compositions

**When to Use Form E.** Form E is appropriate for unpublished and published musical compositions by authors who are U.S. citizens or domiciliaries, and for musical compositions first published in the United States.

**What Is a "Musical Composition"?** The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

**Song Lyrics Alone.** The term "musical compositions" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

**Sound Recordings.** Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical compositions should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

**Duration of Copyright.** Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

**How to Register a Claim.** To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20540, one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned, so do not send your only copy.

**Procedure to Follow If Work Is Later Published.** If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

**What Is "Publication"?** Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to give notice of copyright to copies that are to be circulated beyond his control.

**How to Secure Copyright in a Published Musical Composition:**

1. **Produce copies with copyright notice**, by printing or other means of reproduction.
2. **Publish the work.**
3. **Register the copyright claim**, following the instructions on page 1 of this form.

**The Copyright Notice.** In order to secure and maintain copyright protection for a published work, it is essential that the right to secure copyright is

All copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:

1. The word "Copyright," the abbreviation "Copr.," or the symbol ©. Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.
2. The year date of publication. This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.
3. The name of the copyright owner (or owners). Example: © John Doe 1973.

**NOTE:** If copies are published without the required notice, the right to secure copyright is lost and cannot be restored.

FOR COPYRIGHT OFFICE USE ONLY

Application received
MAR 31 1976

One copy received

Two copies received

Fee received

U.S. GOVERNMENT PRINTING OFFICE: 1971—O—454—097



Copyright © 1976 by Light Music
All Rights Reserved





**BMI**

AGREEMENT made this  13th  day of  JUNE  , 1973 , between

BROADCAST MUSIC, INC., a New York corporation, whose address is 40 West 57th Street, New York, N.Y. 10019

(hereinafter called "BMI") and ............... CARLOS SANTANA

an individual xxxxxxxxxxx.................................................................doing business under the

firm name and style of..................................... LIGHT MUSIC .....................................whose address is

c/o Robert E. Gordon, Esq., 555 California Street, Suite 3100, San Francisco, CA. 94104
    Street or Avenue)               (City)          (State)    (Zip)

(hereinafter called "Publisher").

### W I T N E S S E T H :

FIRST: The term of this agreement shall be the period of five (5) years from April 1, 1973

to   March 31, 1978   , and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period, or any such additional five (5) year period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such term.

SECOND:  As used in this agreement, the word "works" shall mean:

A. All musical and dramatico-musical compositions, whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical and dramatico-musical compositions, whether published or unpublished, in which hereafter during the term Publisher acquires ownership or copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD:  Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, for profit or otherwise, anywhere in the world, any part or all of the works, such rights being granted exclusively to BMI except to the extent of any prior grant listed on clearance sheets or cue sheets submitted pursuant to subparagraph A of paragraph TENTH with respect to works heretofore acquired by Publisher.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such work publicly by means of radio and television or for archive or audition purposes and not for sale to the public or for synchronization with motion pictures intended primarily for theatrical exhibition or with programs distributed by means of syndication to broadcasting stations.

C. The non-exclusive right to adapt, arrange, change and dramatize any part or all of any of the works for performance purposes, and to license others to do so.

FOURTH:

A. The rights granted to BMI by subparagraph A of paragraph THIRD hereof shall not include the right to perform or license the performance of more than one song or aria from an opera, operetta or musical comedy or more than five (5) minutes from a ballet if such performance is accompanied by the dramatic action, costumes or scenery of that opera, operetta, musical comedy or ballet.

B. Publisher, together with all the writers and co-publishers, if any, of a work, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of more than thirty (30) minutes' duration of a work which is an opera, operetta or musical comedy, but this right shall not apply to a work which is the score of a film originally produced for exhibition in motion picture theaters when performed as incorporated in such film, or which is a score originally written for a radio or television program when performed as incorporated in such program.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder, BMI agrees to make the following payments to Publisher with respect to each of the works in which BMI has exclusive performing rights:

(1) For performances of works on broadcasting stations in the United States, its territories and possessions and Canada BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be established by BMI in accordance with its then current system of computing the number of such performances.

(2) For performances of works outside of the United States, its territories and possessions and Canada BMI will pay to Publisher all monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the works after deduction of ten percent (10%) of the gross amount thereof to cover BMI's handling charge.

(3) In the case of works which, or rights in which, are owned by Publisher jointly with one or more other publishers who have granted performing rights therein to BMI, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers, providing for a different division of payment.

B. Notwithstanding the foregoing provisions of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to any performance of a work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such work referred to in subparagraphs A and D(1) of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof.

SIXTH:   BMI will furnish statements to Publisher at least twice during each year of the term showing the number of performances of the works as computed pursuant to subparagraph A(1) of paragraph FIFTH hereof, and at least once during each year of the term showing the monies received by BMI referred to in subparagraph A(2) of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for advances or amounts due to BMI from Publisher.

SEVENTH:

A. Nothing in this agreement requires BMI to continue to license the works subsequent to the termination of this agreement. In the event that BMI continues to license any or all of the works, however, BMI shall continue to make payments to Publisher for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such works to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Published fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly on demand. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher. In the event that Publisher subsequently certifies to BMI by registered or certified mail that it has made no such grant or purported grant, BMI shall resume payments to Publisher commencing with the calendar quarter immediately following the giving of such notice by Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions and Canada shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance. Royalties earned by any of the works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers.

EIGHTH:   In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by the statements rendered to Publisher prior to the effective date of such termination, there is an indebtedness from Publisher to BMI, for advances or otherwise, such termination shall not be effective with respect to the works then embraced by this agreement until thirty (30) days after such indebtedness shall be paid by Publisher or until a statement is rendered by BMI at its normal accounting period showing that the amount of such indebtedness has been fully recouped by BMI.

NINTH:

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any work which in its opinion (1) is similar to a previously existing composition and might constitute a copyright infringement, or (2) has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition, or (3) is offensive, in bad taste or against public morals, or (4) is not reasonably suitable for performance.

B. In the case of works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such work from this agreement, or (2) to classify any such work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such work, to terminate all rights in such work granted to BMI herein and all such rights of BMI in such work shall revert to Publisher thirty (30) days after the date of such notice from Publisher to BMI.

TENTH:

A. With respect to each of the works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) Two copies of a completed clearance sheet in the form supplied by BMI, unless a cue sheet with respect to such work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2) A legible lead sheet or other written or printed copy of such work setting forth the lyrics, if any, and music correctly metered; provided that with respect to a work used solely as background music, such copy need be furnished only if requested by BMI.

(3) If such work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, composers, publisher and nature and duration of the use of the work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each clearance sheet or cue sheet shall constitute a warranty by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the works listed thereon has been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To submit to BMI, from time to time, so far as known to Publisher, the manufacturers' names, catalog numbers and the names of the recording artists with respect to all phonograph records, tapes, electrical transcriptions and other reproductions made of any of the works.

(2) To secure and maintain copyright protection of the works pursuant to the Copyright Law of the United States and pursuant to the laws of each other nations of the world where such protection is afforded; and to give BMI prompt written notice of the date and number of copyright registration and/or renewal of each work registered in the United States Copyright Office.

(3) To obtain and deliver to BMI any written agreements, assignments, instruments or documents of any kind with respect to any of the works which BMI may reasonably require.

ELEVENTH: Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B. Except with respect to works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance sheet or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has exclusive performing rights in each of the works by virtue of written grants thereof to Publisher signed by all the authors and composers or other owners of such work.

TWELFTH:

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any work by BMI or its licensees.

B. Upon the receipt by any of the parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due thereunder, pursuant to this agreement or any modification thereof until such claim has been withdrawn, settled or adjudicated.

THIRTEENTH: Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of the said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit.

FOURTEENTH:

A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions and Canada, (hereinafter called "foreign territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the works for any foreign territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such foreign territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the works in any foreign territory as part of an agreement for the publication, exploitation or representation of such works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the works are granted for any foreign territory. Such notice shall set forth the title of the work, the country or countries involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the foreign territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any foreign territory.

C. In the event that BMI transmits to Publisher performance royalties designated as the writer's share of performance royalties earned by any of the works in any foreign territory, Publisher shall promptly pay such royalties to the writer or writers of the works involved. If Publisher is unable for any reason to locate and make payment to any of the writers involved within six (6) months from the date of receipt, the amounts due such writers shall be returned to BMI.

FIFTEENTH:

A. Publisher agrees that Publisher, its agents, employees, representatives or affiliated companies, will not directly or indirectly during the term of this agreement:

(1) Solicit or accept payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicit or accept manuscripts from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permit Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submit to BMI, as one of the works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher agrees that Publisher, its agents, employees or representatives will not directly or indirectly during the term of this agreement make any effort to ascertain from, or offer any inducement or consideration to, anyone, including but not limited to any broadcasting licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C. Publisher agrees to notify BMI promptly in writing (1) of any change of firm name or address of Publisher, and (2) of any change of twenty percent (20%) or more in the ownership thereof.

D. In the event of the violation of any of the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall have the right, in its sole discretion, to terminate this agreement by giving Publisher at least thirty (30) days' notice by registered or certified mail. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH: All disputes of any kind, nature or description whatsoever arising in connection with the terms and conditions of this agreement, or arising out of the performance thereof, or based upon an alleged breach thereof, shall be submitted to arbitration in the City, County and State of New York under the then prevailing rules of the American Arbitration Association by an arbitrator or arbitrators to be selected as follows: Each of the parties hereto shall by written notice to the other have the right to appoint one arbitrator; provided, however, that if within ten (10) days following the giving of such notice by one party the other shall not by written notice appoint another arbitrator the first arbitrator appointed shall be the sole arbitrator. If two arbitrators are so appointed, they shall thereupon appoint the third arbitrator, provided that if ten (10) days shall elapse after the appointment of the second arbitrator and the said two arbitrators are unable to agree upon the appointment of the third arbitrator then either party may in writing request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties hereto and judgment may be, but need not be, entered thereon in any court having jurisdiction. Such award shall include the fixing of the cost of arbitration, which shall be borne by the unsuccessful party.

SEVENTEENTH: Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

EIGHTEENTH: Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished by Publisher in writing to BMI's Department of Publisher Administration.

NINETEENTH: This agreement cannot be changed orally and shall be governed and construed pursuant to the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By _Theodore Zorn_

LIGHT MUSIC

By _Carlos Santana_                    (Sign here)
Carlos Santana

_By Robert E. Gordon_
_atty in fact_

9/72

# BMI

M40142.9601

November 2, 1998

Light Music
c/o Len Freedman Music
123 El Paseo
Santa Barbara, CA 93101

Gentlemen:

This will confirm our understanding with respect to the modification of the agreement dated <u>June 13, 1973</u> between <u>Carlos Santana, as individual dba LIGHT MUSIC</u> (herein called the "former owner") and Broadcast Music, Inc., as modified, (herein called the "basic agreement"):

      1.     You warrant and represent that all right, title and interest of the former owner in and to the basic agreement and in and to the works embraced thereby has been sold, assigned and transferred to <u>STARFAITH L.P., a limited partnership consisting of Guts and Grace Records, Inc. a (California corporation,) general partner, and Carlos Santana and Deborah Santana, as Trustees of the Santana Family Trust, limited partner dba LIGHT MUSIC</u> (herein called the "new owner").

      2.     Effective as of ___4/1/98___, the new owner shall be deemed to have acquired all rights and assumed all obligations of the former owner in and to the basic agreement.

Except as herein specifically modified, all of the terms and conditions of the basic agreement are hereby ratified and affirmed.

Very truly yours,

ACCEPTED AND AGREED TO:                    BROADCAST MUSIC, INC.

<u>LIGHT MUSIC</u>

By _____                 By _____
    CARLOS SANTANA        (Owner)                        Vice President

STARFAITH, L.P.  A LIMITED PARTNERSHIP
<u>DBA LIGHT MUSIC</u>

By _____
    CARLOS SANTANA
    President of
    Guts and Grace Records, Inc.
    General Partner

320 West 57th Street, New York, New York 10019   (212) 586-2000   Telex: 127823

PX, qdr

| For Internal BMI Use Only | | For Internal BMI Use Only |
|---|---|---|
| Received | **BMI** | Entered Via Scope |
| | Performing Rights Administration | By:_____ |
| Performing Rights Administration | | Verified:_____ |

## PLEASE SUPPLY THE FOLLOWING INFORMATION

Date **10/22/97**

EXACT COMPANY NAME:_____ **Starfaith, L.P. dba**
_____ **LIGHT MUSIC**

If this is a new name, indicate former name_____
and enclose cashier's check, money order or personal check payable to BMI for $50.00, the administrative fee for
processing change of publishing company name.

**BUSINESS ADDRESS:**
(include zip code and name of
individual if essential to proper
delivery of mail)

c/o **Len Freedman Music**

**123 El Paseo**

**Santa Barbara, CA 93101**

**BUSINESS PHONE:**      **805      966-6999**
area code

### COMPLETE ONE SECTION ONLY
### A, B OR C

OCT - 9 1997

**A. INDIVIDUALLY OWNED:**

Full Name of Individual _____ Soc. Sec. No._____

Home Address _____

_____

Zip Code

**B. PARTNERSHIP:**      Fed. Tax Acct. No.__91__  1821720
(If not available request form S.S. #4 from IRS)

| List all Partners | | | |
|---|---|---|---|
| **FULL NAME** | **HOME ADDRESS** | **Soc. Sec. No.** | **Pctg. of Ownership** |
| Guts & Grace Records, Inc. | P.O. Box 10348 | 94-4385009 | 1% |
| | San Rafael, CA 94912 Zip Code | | |
| Carlos & Deborah Santana, | P.O. Box 3979 | 68-0370218 | 99% |
| Trustees of the Santana Family Trust | San Rafael, CA 94912 Zip Code | | |
| | Zip Code | | |

101-7/93/mc

CONTINUED ON REVERSE SIDE

14403329003

CHECK IF A NEWLY ORGANIZED CORPORATION.

Fed. Tax Acct. No. _____
(If not available request form S.S. #4 from IRS)

Indicate State in which incorporated _____

### List all Officers

| FULL NAME | TITLE | HOME ADDRESS |
|-----------|-------|--------------|
| | | |
| | | Zip Code |
| | | |
| | | Zip Code |
| | | |
| | | Zip Code |

### List all Stockholders

| FULL NAME | HOME ADDRESS | Pctg. of Ownership |
|-----------|--------------|--------------------|
| | | |
| | Zip Code | |
| | | |
| | Zip Code | |
| | | |
| | Zip Code | |

If new corporate name is indicated on reverse side, check one:

Old corporation has changed its name ☐ (Copy of Certificate of Change of Name filed with Secretary of State must be attached)

New corporation has been formed ☐ (Copy of Certificate of Incorporation filed with Secretary of State must be attached)

PLEASE SIGN AND RETURN ($50.00 FEE FOR CHANGING PUBLISHING CO. NAME, IF APPLICABLE)
TO:

Glenda Davis-Rincon
BMI
320 West 57th Street
New York, NY 10019

_Deborah Santana_
Signature of owner, partner or officer

Officer of Partner
TITLE

Deborah Santana
(Please print name of person signing)

101-7/93

Page 3

# Certificate

## Registration of a Claim to Copyright

in a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United States of America

This is To Certify that the statements set forth in this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

CLASS   REGISTRATION NO.
E   EP 272079
DO NOT WRITE HERE

FORM E

*Register of Copyrights*
*United States of America*

**1. Copyright Claimant(s) and Address(es):**

Name ......... JONDORA MUSIC

Address ......... 1281 - 30th Street, Oakland, California 94608

Name .........

Address .........

**2. Title:** ......... GREEN RIVER
(Title of the musical composition)

**3. Authors:**

Name ......... John Fogerty
(Legal name followed by pseudonym if latter appears on the copies)   Citizenship: U.S.A. ... X ... Other ...
(Check if U.S. citizen)   (Name of country)

Domiciled in U.S.A. Yes .X. No ..... Address Berkeley, California   Author of Words & Music
(State which: words, music, arrangement, etc.)

Name ......... John Brimhall
(Legal name followed by pseudonym if latter appears on the copies)   Citizenship: U.S.A. ... X ... Other ...
(Check if U.S. citizen)   (Name of country)

Domiciled in U.S.A. Yes .X. No ..... Address Miami, Florida   Author of Arrangement
(State which: words, music, arrangement, etc.)

Name .........
(Legal name followed by pseudonym if latter appears on the copies)   Citizenship: U.S.A. ..... Other ...
(Check if U.S. citizen)   (Name of country)

Domiciled in U.S.A. Yes ..... No ..... Address   Author of ...
(State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

December 15, 1969
(Month)   (Day)   (Year)

**(b) Place of Publication:**

United States
(Name of country)

**5. Previous Registration or Publication:**

Was work previously registered? Yes .X.. No ...... Date of registration ...7/14/69... Registration number Eu 126338

Was work previously published? Yes ...... No ..... Date of publication ......... Registration number .........

Is there any substantial NEW MATTER in this version? Yes .X... No ...... If your answer is "Yes," give a brief general statement of the nature of the NEW MATTER in this version.

......... Easy Piano/Easy Organ and Guitar Chords .........

*Complete all applicable spaces on next page*

EXAMINER

7. **Send correspondence to:**

Name _____    Address _____

8. **Send certificate to:**

(Type or print name and address)

Name    JONDORA MUSIC

Address    1281 – 30th Street
          (Number and street)

          Oakland, California 94608
          (City)          (State)          (ZIP code)

## Information concerning copyright in musical compositions

*When To Use Form E.* Form E is appropriate for unpublished and published musical compositions by authors who are U.S. citizens or domiciliaries, and for musical compositions first published in the United States.

*What Is a "Musical Composition"?* The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

—*Song Lyrics Alone.* The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

—*Sound Recordings.* Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical compositions should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

*Duration of Copyright.* Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration. In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

## Unpublished musical compositions

*How To Register a Claim.* To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20540, one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned, so do not send your only copy.

*Procedure To Follow if Work Is Later Published.* If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

## Published musical compositions

*What Is "Publication":* Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

*How To Secure Copyright in a Published Musical Composition:*
1. *Produce copies with copyright notice,* by printing or other means of reproduction.
2. *Publish the work.*
3. *Register the copyright claim,* following the instructions on page 1 of this form.

*The Copyright Notice.* In order to secure and maintain copyright protection for a published work, it is essential that all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements.

1. *The word "Copyright," the abbreviation "Copr.," or the symbol "©".* Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.

2. *The year date of publication.* This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.

3. *The name of the copyright owner (or owners).* Example: © John Doe 1968.

NOTE: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| **Application received** | |
| **One copy received** | |
| **Two copies received**<br>FEB 16 1970 | |
| **Fee received**<br>68562  FEB 16 1970 | |

# GREEN RIVER

Words and Music by
J.C. FOGERTY



Well, take me back down where cool wat-er flows,

Let me re-mem-ber things I love, Stop-pin' at the log where

cat-fish bite, Walk-in' a-long the river road at night, Bare-foot girls

Copyright © 1969 by Jondora Music, Berkeley, Calif.
All rights for the World (except North, Central and South America, France, Morocco, Andorra, Radio Europe 1,
Radio Luxembourg, Tangiers) Agents and Beneficial controlled by Burlington Music Co. Ltd., London, England
International Copyright Secured    Made in U.S.A.    All Rights Reserved





**BMI°**

AGREEMENT made on July 30, 2002 between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and Fantasy, Inc., a California corporation doing business as Jondora Music ("Publisher"), whose address is 2600 Tenth Street, Berkeley, CA 94710.

### W I T N E S S E T H :

1. The term of this agreement shall be the period from January 1, 2002 to September 30, 2003, and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of said initial period or any additional period, upon notice sent by registered, certified or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such period.

2. As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

3. Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, in any and all places and in any and all media, now known or which hereafter may be developed, any part or all of the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

4. Notwithstanding the provisions of subparagraph A of paragraph 3 hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera,

P800                                                                Page 1 of 10

THIS PAGE INTENTIONALLY LEFT BLANK

operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B.  Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph 3 hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C.  Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license or within three (3) months of the performance of the Work or Works so licensed, whichever is earlier, BMI is given written notice thereof and a copy of the license is supplied to BMI.

5.

A.  As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1)  For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher, upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2)  For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3)  In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B.  Notwithstanding the provisions of subparagraph A of this paragraph 5, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such Work referred to in subparagraph A of paragraph 12 hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph 16 hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph 4 hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of the royalty distribution seeking to be adjusted.

6.  In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph 5 hereof.

Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

7.

A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

8. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within twelve (12) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

9.

A. In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI or any other indebtedness owed to BMI by Publisher, such termination shall not be effective until the close of the calendar quarterly period during which (1) Publisher shall repay such unearned balance of advances or indebtedness, or (2) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances or indebtedness has been fully recouped by BMI.

B. The termination of this agreement shall be deemed subject to any rights or obligations existing between BMI and its licensees under licenses then in effect. As a result thereof, notwithstanding such termination, BMI shall have the right to continue to license all of Publisher's Works in all places and in all media with respect to which such licenses exist as of the date of termination, until such licenses expire.

10. Notwithstanding the termination of this agreement, all of the terms and conditions of this agreement shall continue to apply subsequent to such termination with respect to any Works which may continue to be licensed by BMI and any monies payable to Publisher by BMI pursuant to the provisions of this agreement.

11.

A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

P800                                                        Page 4 of 10

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph 11, or pursuant to subparagraph C of paragraph 14 hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B (2) of this paragraph 11, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

12.

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed work registration form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A (3) of this paragraph 12.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D (2) of this paragraph 12.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph 12 with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each work registration form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works, including any commercial recording of such Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish and/or the right to administer the performing rights in and/or collect the royalties for any of the Works.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

P800                                                              Page 5 of 10

13.  Publisher warrants and represents that:

A.  Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B.  Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a work registration form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph 12 hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

14.

A.  Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph 14 shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B.  Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense.  Publisher agrees to cooperate with BMI in all such matters.

C.  In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof and/or to exclude the Work with respect to which a claim is made from this agreement until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

15.  Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph 15 shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph 15 requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder.  In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder shall not constitute an infringement of Publisher's Works on BMI's part.

16.

A.  It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by

any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

17. BMI shall have the right, in its sole discretion, to terminate this agreement if:

A. Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1) Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A (1) and A (2) of this paragraph 17.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A (1) and A (2) of this paragraph 17 have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or monitoring performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph 17, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph 7 hereof.

18. In the event that during the term of this agreement (1) mail addressed to Publisher at the last address furnished by Publisher pursuant to paragraph 22 shall be returned by the post office, or (2) monies shall not have been earned by Publisher pursuant to paragraph 5 hereof for a period of two consecutive years or more, or (3) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail, electronic mail ("e-mail") or facsimile number addressed to the last postal or electronic address or transmitted to the last facsimile number furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. If Publisher failed to maintain a current address with BMI and BMI has made reasonable good-faith efforts in attempting to locate Publisher without success, BMI shall have the right to terminate this agreement pursuant to this paragraph 18 by regular first-class U.S. mail, in lieu of the means otherwise specified, regardless of anything in paragraph 17 to the contrary. In the event of such termination, no payments shall be due Publisher pursuant to paragraph 7 hereof.

19. Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against

P800

Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

20.  All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgment may be entered in New York State Supreme Court or any other court having jurisdiction.

21.  Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

22.  Publisher agrees to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change in Publisher's postal or electronic ("e-mail") address, or facsimile number.  Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last postal or electronic address or facsimile number so furnished by Publisher.

23.  This agreement shall be subject to BMI's standard practices and procedures which are in effect as of the effective date of this agreement and as they may be modified and/or supplemented from time to time.

24.  Publisher acknowledges that the relationship between BMI and Publisher which is created by this agreement is one of ordinary contracting parties and is not intended to be a fiduciary relationship with respect to any of the rights or obligations hereunder.

25.  Publisher authorizes the inclusion of Publisher's name, likeness and biographical information, and those of Publisher's executive employees, in publicly-distributed material relating to Publisher's association with BMI.

26.  This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

27.  In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

28.  Any prior agreements, as modified, between Publisher and BMI are canceled and superseded as of the effective date of this agreement. All works that were embraced by any prior agreement between Publisher and BMI and in which no other licensing organization controls Publisher's performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to Publisher by BMI or unpaid indebtedness owed to BMI by Publisher shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications. If Publisher has acquired the works of the former BMI affiliate who is indicated on the attached terminated agreement, then all works which were embraced by that agreement and in which no other licensing organization controls the performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to said former affiliate by BMI or unpaid indebtedness owed by said former affiliate to BMI shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By ...........................................................................................................

Assistant Vice President

"PUBLISHER"

By ...................................    WILLIAM C. BELMONT    VP
    (Authorized Signatory)         (Print Name and Title of Signer)

If your company structure is a PARTNERSHIP, all other partners must sign below:

By ..........................................................................................................
        Partner                                Printed Name

By ..........................................................................................................
        Partner                                Printed Name

By ..........................................................................................................
        Partner                                Printed Name

By ..........................................................................................................
        Partner                                Printed Name

By ..........................................................................................................
        Partner                                Printed Name

THIS PAGE INTENTIONALLY LEFT BLANK

 

July 29, 2002

Jondora Music
C/o Fantasy, Inc.
2600 Tenth Street
Berkeley, CA 94710

Ladies and Gentlemen:

This will confirm our understanding with respect to the modification of the agreement dated September 12, 1978, between Jondora Music, a California corporation (herein called the "former owner") and Broadcast Music, Inc., as modified, (herein called the "basic agreement"):

1. You warrant and represent that all right, title, and interest of the former owner in and to the basic agreement and in and to the works embraced thereby has been sold, assigned, and transferred to Fantasy, Inc., a California corporation d/b/a Jondora Music (herein called the "new owner").

2. Effective as of January 1, 2002, the new owner shall be deemed to have acquired all rights and assumed all obligations of the former owner in and to the basic agreement.

Except as herein specifically modified, all of the terms and conditions of the basic agreement, as same may have been heretofore modified, are hereby ratified and affirmed.

Very truly yours,

BROADCAST MUSIC, INC.

ACCEPTED AND AGREED TO:

JONDORA MUSIC

By [SEE ATTACHED]
Saul Zaentz, President

By _____
Gary F. Roth
Assistant Vice President

ACCEPTED AND AGREED TO:

FANTASY, INC.

By _____
President

**JONDORA MUSIC COMPANY**
2600 Tenth Street
Berkeley, California  94710

BMI
320 West 57ᵗʰ Street
New York, New York    10019

Attn:  Mr. Gary Roth
       Vice President
       Legal and Business Affairs

                    Re:  Jondora Music Company

Dear Mr. Roth:

As the President of Jondora Music Company, this letter is to
request you to transfer any and all interest which Jondora Music
Company has, to Fantasy, Inc.  This transfer is irrevocable and
includes any rights and interests administered by you in Jondora
Music Company.

Please advise Fantasy, Inc. when this assignment is completed.

If you have any questions, please contact me.

                    Very truly yours,

                    JONDORA MUSIC COMPANY

                    By _____
                       Saul Zaentz, President

Page 3

## Certificate

### Registration of a Claim to Copyright

In a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United State of America

This Is To Certify that the statements set forth in this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



| CLASS | REGISTRATION NO. |
|---|---|
| **E** | **E u 221030** |
| | DO NOT WRITE HERE |

**FORM E**



**1. Copyright Claimant(s) and Address(es):**

Name  Petrie Music

Address  PO Box 26671, San Francisco, Calif. 94126

Name  _____

Address  _____

**2. Title:**  Sambia Pa Ti  (Title of the musical composition)

**3. Authors:**

Name  Carlos Santana   (Legal name followed by pseudonym if latter appears on the copies)   Citizenship: U.S.A. _____ (Check if U.S. citizen)   Other  Mexico (Name of country)

Domiciled in U.S.A.  Yes _____  No _____  Address _____   Author of  Music  (State which: words, music, arrangement, etc.)

Name  _____   (Legal name followed by pseudonym if latter appears on the copies)   Citizenship: U.S.A. _____ (Check if U.S. citizen)   Other _____ (Name of country)

Domiciled in U.S.A.  Yes _____  No _____  Address _____   Author of _____  (State which: words, music, arrangement, etc.)

Name  _____   (Legal name followed by pseudonym if latter appears on the copies)   Citizenship: U.S.A. _____ (Check if U.S. citizen)   Other _____ (Name of country)

Domiciled in U.S.A.  Yes _____  No _____  Address _____   Author of _____  (State which: words, music, arrangement, etc.)

**4. (a) Date of Publication:**

_____
(Month)     (Day)     (Year)

**(b) Place of Publication:**

_____
(Name of country)

**5. Previous Registration or Publication:**

Was work previously registered? Yes _____ No _____ Date of registration _____ Registration number _____

Was work previously published? Yes _____ No _____ Date of publication _____ Registration number _____

Is there any substantial NEW MATTER in this version? Yes _____ No _____ If your answer is "Yes," give a brief general statement of the nature of the NEW MATTER in this version.

| EXAMINER |
|---|
| |

*Complete all applicable spaces on next page*

6. Deposit account:

040303 000

7. Send correspondence to:

Name _Petra Music_    Address _P.C. Box 26671 San Francisco_

8. Send certificate to:

(Type or print name and address)

Name _Petra Music_

Address _P.C. Box 26671_
(Number and street)

_San Francisco, Calif._
(City)         (State)         (ZIP code)

## Information concerning copyright in musical compositions

**When to Use Form E.** Form E is appropriate for unpublished and published musical compositions by authors who are U.S. citizens or domiciliaries, and for musical compositions first published in the United States.

**What Is a "Musical Composition"?** The term "musical composition" includes compositions consisting of music alone, or of words and music combined. It also includes arrangements and other versions of earlier compositions, if new copyrightable work of authorship has been added.

**—Song Lyrics Alone.** The term "musical composition" does not include song poems and other works consisting of words without music. Works of that type are not registrable for copyright in unpublished form.

**—Sound Recordings.** Phonograph records, tape recordings, and other sound recordings are not regarded as "copies" of the musical compositions recorded on them, and are not acceptable for copyright registration. For purposes of deposit, the musical compositions should be written in some form of legible notation. If the composition contains words, they should be written above or beneath the notes to which they are sung.

**Duration of Copyright.** Statutory copyright begins on the date the work was first published, or, if the work was registered for copyright in unpublished form, copyright begins on the date of registration.: In either case, copyright lasts for 28 years, and may be renewed for a second 28-year term.

### Unpublished musical compositions

**How to Register a Claim.** To obtain copyright registration, mail to the Register of Copyrights, Library of Congress, Washington, D.C. 20540, one complete copy of the musical composition, an application Form E, properly completed and signed, and a fee of $6. Manuscripts are not returned so do not send your only copy.

**Procedure to Follow if Work Is Later Published.** If the work is later reproduced in copies and published, it is necessary to make a second registration, following the procedure outlined below. To maintain copyright protection, all copies of the published edition must contain a copyright notice in the required form and position.

### Published musical compositions

**What Is "Publication"?** Publication, generally, means the sale, placing on sale, or public distribution of copies. Limited distribution of so-called "professional" copies ordinarily would not constitute publication. However, since the dividing line between a preliminary distribution and actual publication may be difficult to determine, it is wise for the author to affix notice of copyright to copies that are to be circulated beyond his control.

**How to Secure Copyright in a Published Musical Composition:**
1. Produce copies with copyright notice, by printing or other means of reproduction.
2. Publish the work.
3. Register the copyright claim, following the instructions on page 1 of this form.

**The Copyright Notice.** In order to secure and maintain copyright protection for a published work, it is essential that all copies published in the United States contain the statutory copyright notice. This notice shall appear on the title page or first page of music and must consist of three elements:

1. The word "Copyright," the abbreviation "Copr.," or the symbol ©. Use of the symbol © may result in securing copyright in countries which are parties to the Universal Copyright Convention.

2. The year date of publication. This is ordinarily the date when copies were first placed on sale, sold, or publicly distributed. However, if the work has been registered for copyright in unpublished form, the notice should contain the year of registration; or, if there is new copyrightable matter in the published version, it should include both dates.

3. The name of the copyright owner (or owners). Example: © John Doe 1969.

NOTE: If copies are published without the required notice the right to secure copyright is lost and cannot be restored.



| Application received | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|
| One copy received NOV 12 1970 | |
| Two copies received | |
| Fee received 20906 SEP 8 1970 | |