#53521



# BMI®

AGREEMENT made on June 18, 2001 between BROADCAST MUSIC, INC. ("BMI"), a New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and CAREERS BMG MUSIC PUBLISHING, INC., a New York corporation, ("Publisher"), whose address is 8750 Wilshire Boulevard, Beverly Hills, CA 90211.

## W I T N E S S E T H :

1.  The term of this agreement shall be the period from        October 1, 2000 to        December 31, 2004        , and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of said initial period or any additional period, upon notice sent by registered, certified or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such period.

2.  As used in this agreement, the word "Work" or "Works" shall mean:

A.  All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B.  All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

3.  Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A.  All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, in any and all places and in any and all media, now known or which hereafter may be developed, any part or all of the Works.

B.  The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C.  The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

4.  Notwithstanding the provisions of subparagraph A of paragraph 3 hereof:

A.  The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera,

\*excluding Canada

P800

THIS PAGE INTENTIONALLY LEFT BLANK

operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph 3 hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license or within three (3) months of the performance of the Work or Works so licensed, whichever is earlier, BMI is given written notice thereof and a copy of the license is supplied to BMI.

5.

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph 5, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such Work referred to in subparagraph A of paragraph 12 hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph 16 hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph 4 hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of the royalty distribution seeking to be adjusted.

6. In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph 5 hereof.

P800

Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

7.

    A. Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

    B. BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

    8. In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within twelve (12) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

9.

    A. In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI or any other indebtedness owed to BMI by Publisher, such termination shall not be effective until the close of the calendar quarterly period during which (1) Publisher shall repay such unearned balance of advances or indebtedness, or (2) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances or indebtedness has been fully recouped by BMI.

    B. The termination of this agreement shall be deemed subject to any rights or obligations existing between BMI and its licensees under licenses then in effect. As a result thereof, notwithstanding such termination, BMI shall have the right to continue to license all of Publisher's Works in all places and in all media with respect to which such licenses exist as of the date of termination, until such licenses expire.

    10. Notwithstanding the termination of this agreement, all of the terms and conditions of this agreement shall continue to apply subsequent to such termination with respect to any Works which may continue to be licensed by BMI and any monies payable to Publisher by BMI pursuant to the provisions of this agreement.

11.

    A. BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B. In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C. In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph 11, or pursuant to subparagraph C of paragraph 14 hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B (2) of this paragraph 11, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

12.

A. With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1) A completed work registration form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A (3) of this paragraph 12.

(2) If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (b) of subparagraph D (2) of this paragraph 12.

(3) If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B. Publisher shall submit the material described in subparagraph A of this paragraph 12 with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C. The submission of each work registration form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D. Publisher agrees:

(1) To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2) At BMI's request:

(a) To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b) To obtain and deliver to BMI copies of: unpublished and published Works, including any commercial recording of such Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish and/or the right to administer the performing rights in and/or collect the royalties for any of the Works.

E. Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

13.   Publisher warrants and represents that:

A.   Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B.   Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a work registration form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph 12 hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

14.

A.   Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph 14 shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B.   Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense.  Publisher agrees to cooperate with BMI in all such matters.

C.   In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof and/or to exclude the Work with respect to which a claim is made from this agreement until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

15.   Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph 15 shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph 15 requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder.  In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder shall not constitute an infringement of Publisher's Works on BMI's part.

16.

A.   It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by

any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

17.   BMI shall have the right, in its sole discretion, to terminate this agreement if:

A.  Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1)  Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2)  Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3)  Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A (1) and A (2) of this paragraph 17.

(4)  Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A (1) and A (2) of this paragraph 17 have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or monitoring performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph 17, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph 7 hereof.

18.   In the event that during the term of this agreement (1) mail addressed to Publisher at the last address furnished by Publisher pursuant to paragraph 22 shall be returned by the post office, or (2) monies shall not have been earned by Publisher pursuant to paragraph 5 hereof for a period of two consecutive years or more, or (3) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail, electronic mail ("e-mail") or facsimile number addressed to the last postal or electronic address or transmitted to the last facsimile number furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. If Publisher failed to maintain a current address with BMI and BMI has made reasonable good-faith efforts in attempting to locate Publisher without success, BMI shall have the right to terminate this agreement pursuant to this paragraph 18 by regular first-class U.S. mail, in lieu of the means otherwise specified, regardless of anything in paragraph 17 to the contrary. In the event of such termination, no payments shall be due Publisher pursuant to paragraph 7 hereof.

19.   Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against

Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works for which the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

20.  All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgment may be entered in New York State Supreme Court or any other court having jurisdiction.

21.  Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

22.  Publisher agrees to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change in Publisher's address. Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

23.  This agreement shall be subject to BMI's standard practices and procedures which are in effect as of the effective date of this agreement and as they may be modified and/or supplemented from time to time.

24.  Publisher acknowledges that the relationship between BMI and Publisher which is created by this agreement is one of ordinary contracting parties and is not intended to be a fiduciary relationship with respect to any of the rights or obligations hereunder.

25.  Publisher authorizes the inclusion of Publisher's name, likeness and biographical information, and those of Publisher's executive employees, in publicly-distributed material relating to Publisher's association with BMI.

26.  This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

27.  In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

28.  Any prior agreements, as modified, between Publisher and BMI are canceled and superseded as of the effective date of this agreement.  All works that were embraced by any prior agreement between Publisher and BMI and in which no other licensing organization controls Publisher's performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to Publisher by BMI or unpaid indebtedness owed to BMI by Publisher shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications. If Publisher has acquired the works of the former BMI affiliate who is indicated on the attached terminated agreement, then all works which were embraced by that agreement and in which no other licensing organization controls the performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to said former affiliate by BMI or unpaid indebtedness owed by said former affiliate to BMI shall be deemed to be recoupable by BMI from any monies which become payable to Publisher pursuant to this agreement and any extensions, renewals or modifications.

P800                                                                                                    Page 8 of 10

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

**BROADCAST MUSIC, INC**

By ............ *Evelyn Duckstein* ........................................................

    *Asst.*    Vice President

---

**"PUBLISHER"**

By ...................................................     Nicholas Firth, President

      (Authorized Signatory)           (Print Name and Title of Signer)

**If your company structure is a PARTNERSHIP, all other partners must sign below:**

By ........................................................................................................

         Partner                            Printed Name

By ........................................................................................................

         Partner                            Printed Name

By ........................................................................................................

         Partner                            Printed Name

By ........................................................................................................

         Partner                            Printed Name

By ........................................................................................................

         Partner                            Printed Name

THIS PAGE INTENTIONALLY LEFT BLANK

03090596001

2694 487

## ASSIGNMENT

For valuable consideration, receipt of which is hereby acknowledged, the undersigned hereby sells, assigns, transfers, and sets over to CABERS-BMG MUSIC PUBLISHING INTERNATIONAL, INC. all the undersigned's right, title and interest in and to the musical compositions listed on Exhibit "A" attached hereto and by this reference incorporated herein, including, without limitation, the titles, music and lyrics thereof and further including, without limitation, the undersigned's ownership of all copyrights therein and all rights to and under the copyrights for the full term of copyright and any extensions or renewals thereof in the United States and elsewhere throughout the world and universe; all versions and derivative works (if and to the extent owned by the undersigned) of said musical compositions and all copyrights in such other versions or derivative works; all causes of action for infringement of the same, past, present and future; all proprietary rights; and all other rights (existing, contingent, expectant or otherwise) whether now or hereafter known with respect thereto; and all the results and proceeds from the foregoing accrued and unpaid and hereafter accruing.

If any provision of this instrument of transfer shall be held void, invalid or inoperative, no other provision of this instrument of transfer shall be affected as a result thereof and, accordingly, the remaining provisions of this instrument of transfer shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned has duly executed this Assignment this 4th day of Oct , 1991.

SANTANA BLUES BAND d/b/a Petra Music

By _____

STATE OF  CALIFORNIA

COUNTY OF  MARIN

On October 4, _____, 1991 before me personally came Greg Rolle _____, known to me to be the individual described in and who executed the foregoing instrument, and acknowledged to me that he executed it.

_____

OFFICIAL SEAL
Sheila T. Dasovich
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
MARIN COUNTY
My Commission Expires Dec. 2, 1991

7648  1
092191                                                    1

0309059b005

2694 489

| TITLE | REGISTRATION NUMBER |
|---|---|
| EVERYBODY'S EVERYTHING | Eu 282536<br>Ep 293845 |
| FUTURE PRIMITIVE | Eu 362451 |
| ETERNAL CARAVAN OF REINCARNATION | Eu 362445 |
| WAVES WITHIN | Eu 362446 |
| LOOK UP TO SEE WHAT'S COMING DOWN | Eu 362447 |
| JUST IN TIME TO SEE THE SUN | Eu 362448 |
| SONG OF THE WIND | Eu 362449 |
| ALL THE LOVE IN THE UNIVERSE | Eu 362450 |
| EVERY STEP OF THE WAY | Eu 362453 |
| LA FUENTE DEL RITMO | Eu 362452 |
| FREE FORM FUNKAFIDE FILTH | Eu 350955 |
| BALLIN' | Pa 398158 |
| MAMA BLESS THE MORNING | Eu 255180 |

\8324

03090596002

2694 488

EXHIBIT 2

| TITLE | REGISTRATION NUMBER |
|---|---|
| WAITING | Eu 133365 |
| SHADES OF TIME | Eu 133361 |
| SAVOR | Eu 133362 |
| PERSUASION | Eu 58230 |
| TREAT | Eu 133363 |
| YOU JUST DON'T CARE | Eu 133360 |
| SOUL SACRIFICE | Eu 133364 |
| SINGING WINDS AND CRYING BEASTS | Eu 221027 |
| SE A CABO | Eu 221029 |
| MOTHER'S DAUGHTER | Eu 221028 |
| SAMBA PA TI | Eu 221030 |
| HOPE YOU'RE FEELING BETTER | Eu 221031 |
| EL NICOYA | Eu 253586 |
| INCIDENT AT NESHABUR | Eu 253585 |
| BATUKA | Eu 291345 |
| NO ONE TO DEPEND ON | Eu 284165 |
| TABOO | Eu 284164 |
| TOUSSAINT L'OVERTURE | Eu 319014 |
| GUAJIRA | Eu 284166 |
| EVERYTHING'S COMING OUR WAY | Eu 284167 |

**FEE CHANGES**
Fees are effective through June 30, 2002. After that date, check the Copyright Office website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

1 32 798 136

# FORM PA
**For a Work of the Performing Arts**
UNITED STATES COPYRIGHT OFFICE

**PA 1-120-576**

EFFECTIVE DATE OF REGISTRATION

| 12 | 03 | 02 |
|----|----|-----|
| Month | Day | Year |



---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**

AYE AYE AYE

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions

Words and Music

---

**NAME OF AUTHOR ▼**

Carlos Santana

**DATES OF BIRTH AND DEATH**
Year Born ▼  Year Died ▼
1947

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Words and Music

**NAME OF AUTHOR ▼**

Michael Shrieve

**DATES OF BIRTH AND DEATH**
Year Born ▼  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Words and Music

**NAME OF AUTHOR ▼**

Karl Perazzo

**DATES OF BIRTH AND DEATH**
Year Born ▼  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Music

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

---

**3**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
2002 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶ October  Day ▶ 22  Year ▶ 2002
U.S.A. ◀ Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Stellabella Music
1482 E. Valley Road
Santa Barbara, CA

Maitreya Music
1482 East Valley Road
Santa Barbara, CA 93108

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

By Contractual Agreement

APPLICATION RECEIVED
DEC 0 3 2002
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 0 3 2002
FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

| EXAMINED BY ʃʃαʍ | FORM PA |
|---|---|
| CHECKED BY | |
| ☐ CORRESPONDENCE ☐ Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is "no," go to space 7.

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼         Year of Registration ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                                                Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.    Name/Address/Apt/City/State/ZIP ▼

Stellabella Music
c/o Len Freedman Music, Inc.
1482 East Valley Road, Suite 400
Santa Barbara, CA 93108

Area code and daytime telephone number ▶  805  966-6999        Fax number ▶ ( 805 ) 966-0768

Email ▶  salterst@aol.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  **Stellabella Music**

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Len Freedman                                                       Date ▶  11/14/2002

Handwritten signature (X) ▼

X

Certificate will be mailed in window envelope to this address:

Name ▼        Stellabella Music
c/o Len Freedman Music, Inc.

Number/Street/Apt ▼    1482 East Valley Road, Suite 400

City, State ZIP ▼      Santa Barbara, CA 93108

Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

U.S. GOVERNMENT PRINTING OFFICE

# CONTINUATION SHEET
# FOR APPLICATION FORMS

- This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA only. Indicate which basic form you are continuing in the space in the upper right-hand corner.

- If at all possible, try to fit the information called for into the spaces provided on the basic form.

- If you do not have space enough for all the information you need to give on the basic form, use this Continuation Sheet and submit it with the basic form.

- If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them.

- Part A of this sheet is intended to identify the basic application.
  Part B is a continuation of Space 2 on the basic application.
  Part C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on the basic application.

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

■ FORM PA /CON

UNITED STATES COPYRIGHT OFFICE

PA 1-120-576

PA AU SE SEG SEU SR SRU TX TXU VA VAU

EFFECTIVE DATE OF REGISTRATION

12 (Month)    03 (Day)    02 (Year)

CONTINUATION SHEET RECEIVED

DEC 0 3 2002

Page   3   of   4   pages

---

## A
### Identification of Application

**IDENTIFICATION OF CONTINUATION SHEET:** This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:

- **TITLE:** (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)

  AYE AYE AYE

- **NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):** (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form.)

  Stellabella Music, 1482 East Valley Road, Santa Barbara, CA 93108

---

## B
### Continuation of Space 2

**d**

| NAME OF AUTHOR ▼ | DATES OF BIRTH AND DEATH |
|---|---|
| Raul Rekow | Year Born▼        Year Died▼ |

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____ U.S. _____
    { Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☒ No   *If the answer to either of these questions is "Yes," see detailed instructions.*
Pseudonymous? ☐ Yes ☒ No

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by the author in which copyright is claimed. ▼
   Music

---

**e**

| NAME OF AUTHOR ▼ | DATES OF BIRTH AND DEATH |
|---|---|
|  | Year Born▼        Year Died▼ |

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
    { Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☐ No   *If the answer to either of these questions is "Yes," see detailed instructions.*
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by the author in which copyright is claimed. ▼

---

**f**

| NAME OF AUTHOR ▼ | DATES OF BIRTH AND DEATH |
|---|---|
|  | Year Born▼        Year Died▼ |

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
    { Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes  ☐ No   *If the answer to either of these questions is "Yes," see detailed instructions.*
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by the author in which copyright is claimed. ▼

---

*Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form.*

14660079000

D5696     740529

# BMI

AGREEMENT made on ....August 6, 1999........................ between BROADCAST MUSIC, INC. ("BMI"), a

New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and ...STARFAITH L.P. a limited...

...partnership consisting of Guts and Grace Records, Inc., a (California corporation [general]....

......partner, and Carlos and Deborah Santana Family Trust, limited partner dba STELLABELLA MUSIC...

▶................................... ("Publisher"), whose address is ....c/o Len Freedman Music, Inc.................................

...719 Lilac Drive, Santa Barbara, CA. 93108..................................................................................

W I T N E S S E T H:

**FIRST:** The term of this agreement shall be the period from ............January 1, 1999.............................

to......December 31, 2003........................., and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period or any additional period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such period.

**SECOND:** As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

**THIRD:** Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the world, any part or all the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

**FOURTH:** Notwithstanding the provisions of subparagraph A of paragraph THIRD hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta or musical show or more than five (5) minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of Works comprising more than thirty (30) minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license BMI is given written notice thereof and a copy of the license is supplied to BMI.

**FIFTH:**

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, at royalty amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of and payment for such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the term of this agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from

Publisher of all the material with respect to such Work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of such statement.

SIXTH: In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

SEVENTH:

A.   Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions.  Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails to so inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI.  In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B.   BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works.  Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

C.   In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization.  In the event that Publisher was or will be so paid or does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

EIGHTH: In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI, such termination shall not be effective until the close of the calendar quarterly period during which (A) Publisher shall repay such unearned balance of advances, or (B) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances has been fully recouped by BMI.

NINTH:

A.   BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B.   In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C.   In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher.  In the event that a Work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

TENTH:

A.   With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1)   A completed clearance form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2)   If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (h) of subparagraph D(2) of this paragraph TENTH.

(3)   If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B.   Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C.   The submission of each clearance form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D.   Publisher agrees:

(1)   To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2)  At BMI's request:

(a)  To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b)  To obtain and deliver to BMI copies of:  unpublished and published Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the Works.

E.  Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

ELEVENTH:  Publisher warrants and represents that:

A.  Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B.  Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

TWELFTH:

A.  Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B.  Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense.  Publisher agrees to cooperate with BMI in all such matters.

C.  In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the Work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

THIRTEENTH:  Publisher makes, constitutes and appoints BMI, or its nominees, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit.  Notwithstanding the foregoing, nothing in this paragraph THIRTEENTH requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder.  In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder, shall not constitute an infringement of Publisher's Works on BMI's part.

FOURTEENTH:

A.  It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories").  Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof.  Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B.  Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory.  Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share.  Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

FIFTEENTH:  BMI shall have the right, in its sole discretion, to terminate this agreement if:

A.  Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1)  Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2)  Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

14660079001

(3)  Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4)  Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B.  Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C.  Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH:  In the event that during the term of this agreement (1) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (2) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

SEVENTEENTH:  Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

EIGHTEENTH:  All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows:

Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgement may be entered in New York State Supreme Court or any other court having jurisdiction.

NINETEENTH:  Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

TWENTIETH:  Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

TWENTY-FIRST:  This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

TWENTY-SECOND:  In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By ....................................................
                                                    Assistant                    Vice President

STELLABELLA MUSIC

....................................................

By Deborah Santana ...............................
     Deborah Santana              General partner
                                  (Title of Signer)

4/94

**BMI**

AGREEMENT made this **27th** day of **August**, 19 74, between

BROADCAST MUSIC, INC., a New York corporation, whose address is 40 West 57th Street, New York, N.Y. 10019 (hereinafter called "BMI") and **MICHAEL SHRIEVE**

a El **Individual** ~~corporation~~ ...................................................................................................................... doing business under the

firm name and style of ................. **MAITREYA MUSIC** ...................................................... whose address is

**C/O Robert E. Gordon, Esq.,   555 California Street,   San Francisco, Ca 94104**
Street or Avenue                          (City)                              (State)        (Zip)

(hereinafter called "Publisher").

## W I T N E S S E T H :

FIRST: The term of this agreement shall be the period of five (5) years from **July 1, 1974** to **June 30, 1979**, and continuing thereafter for additional periods of five (5) years each unless terminated by either party at the end of such initial period, or any such additional five (5) year period, upon notice by registered or certified mail not more than six (6) months or less than three (3) months prior to the end of any such term.

SECOND:  As used in this agreement, the word "works" shall mean:

A. All musical and dramatico-musical compositions, whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing rights, and

B. All musical and dramatico-musical compositions, whether published or unpublished, in which hereafter during the term Publisher acquires ownership or copyright or ownership or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD:  Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, for profit or otherwise, anywhere in the world, any part or all of the works, such rights being granted exclusively to BMI except to the extent of any prior grant listed on clearance sheets or cue sheets submitted pursuant to subparagraph A of paragraph TENTH with respect to works heretofore acquired by Publisher.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such work publicly by means of radio and television or for archive or audition purposes and not for sale to the public or for synchronization with motion pictures intended primarily for theatrical exhibition or with programs distributed by means of syndication to broadcasting stations.

C. The non-exclusive right to adapt, arrange, change and dramatize any part or all of any of the works for performance purposes, and to license others to do so.

FOURTH:

A. The rights granted to BMI by subparagraph A of paragraph THIRD hereof shall not include the right to perform or license the performance of more than one song or aria from an opera, operetta or musical comedy or more than five (5) minutes from a ballet if such performance is accompanied by the dramatic action, costumes or scenery of that opera, operetta, musical comedy or ballet.

B. Publisher, together with all the writers and co-publishers, if any, of a work, shall have the right jointly, by written notice to BMI, to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of more than thirty (30) minutes' duration of a work which is an opera, operetta or musical comedy, but this right shall not apply to a work which is the score of a film originally produced for exhibition in motion picture theaters when performed as incorporated in such film, or which is a score originally written for a radio or television program when performed as incorporated in such program.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder, BMI agrees to make the following payments to Publisher with respect to each of the works in which BMI has exclusive performing rights:

(1) For performances of works on broadcasting stations in the United States, its territories and possessions and Canada BMI will pay amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

(2) For performances of works outside of the United States, its territories and possessions and Canada BMI will pay to Publisher all monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization as the publisher's share of foreign performance royalties earned by any of the works after deduction of ten percent (10%) of the gross amount thereof to cover BMI's handling charge.

(3) In the case of works which, or rights in which, are owned by Publisher jointly with one or more other publishers who have granted performing rights therein to BMI, the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers, unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers, providing for a different division of payment.

B. Notwithstanding the foregoing provisions of this paragraph FIFTH, BMI shall have no obligation to make payment hereunder with respect to any performance of a work which occurs prior to the date on which BMI shall have received from Publisher all of the material with respect to such work referred to in subparagraphs A and D (1) of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof.

SIXTH:   BMI will furnish statements to Publisher at least twice during each year of the term showing the number of performances of the works as computed pursuant to subparagraph A(1) of paragraph FIFTH hereof, and at least once during each year of the term showing the monies received by BMI referred to in subparagraph A(2) of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for advances or amounts due to BMI from Publisher.

SEVENTH:

A.  Nothing in this agreement requires BMI to continue to license the works subsequent to the termination of this agreement. In the event that BMI continues to license any or all of the works, however, BMI shall continue to make payments to Publisher for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such works to any other licensing organization. The amounts of such payments shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Published fails so to inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly on demand. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher. In the event that Publisher subsequently certifies to BMI by registered or certified mail that it has made no such grant or purported grant, BMI shall resume payments to Publisher commencing with the calendar quarter immediately following the giving of such notice by Publisher.

B.  BMI's obligation to continue payments to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions and Canada shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by any of the works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers.

EIGHTH:   In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by the statements rendered to Publisher prior to the effective date of such termination, there is an indebtedness from Publisher to BMI, for advances or otherwise, such termination shall not be effective with respect to the works then embraced by this agreement until thirty (30) days after such indebtedness shall be paid by Publisher or until a statement is rendered by BMI at its normal accounting period showing that the amount of such indebtedness has been fully recouped by BMI.

NINTH:

A.  BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any work which in its opinion (1) is similar to a previously existing composition and might constitute a copyright infringement, or (2) has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition, or (3) is offensive, in bad taste or against public morals, or (4) is not reasonably suitable for performance.

B.  In the case of works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such work from this agreement, or (2) to classify any such work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C.  In the event that any work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such work shall automatically revert to Publisher ten (10) days after the date of such exclusion given by BMI to Publisher. In the event that a work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such work, to terminate all rights in such work granted to BMI herein and all such rights of any kind in such work shall revert to Publisher thirty (30) days after the date of such notice from Publisher to BMI.

TENTH:

A.  With respect to each of the works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1)  Two copies of a completed clearance sheet in the form supplied by BMI, unless a cue sheet with respect to such work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2)  A legible lead sheet or other written or printed copy of such work setting forth the lyrics, if any, and music correctly metered; provided that with respect to a work used solely as background music, such copy need be furnished only if requested by BMI.

(3)  If such work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, composers, publisher and nature and duration of the use of the work in such film or tape.

B.  Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C.  The submission of each clearance sheet or cue sheet shall constitute a warranty by Publisher that all of the information contained therein is true and correct and that no performing rights in any of the works listed thereon has been granted to or reserved by others except as specifically set forth therein.

D.  Publisher agrees:

(1)  To submit to BMI, from time to time, so far as known to Publisher, the manufacturers' names, catalog numbers and the names of the recording artists with respect to all phonograph records, tapes, electrical transcriptions and other reproductions made of any of the works.

(2) To secure and maintain copyright protection of the works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI prompt written notice of the date and number of copyright registration and/or renewal of each work registered in the United States Copyright Office.

(3) To obtain and deliver to BMI any written agreements, assignments, instruments or documents of any kind with respect to any of the works which BMI may reasonably require.

ELEVENTH: Publisher warrants and represents that:

A. Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B. Except with respect to works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance sheet or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has exclusive performing rights in each of the works by virtue of written grants thereof to Publisher signed by all the authors and composers or other owners of such work.

TWELFTH:

A. Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher in this agreement; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any work by BMI or its licensees.

B. Upon the receipt by any of the parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C. In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement on any modification thereof until such claim has been withdrawn, settled or adjudicated.

THIRTEENTH: Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and to recover damages in respect of or for the infringement or other violation of the said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit.

FOURTEENTH:

A. It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions and Canada, (hereinafter called "foreign territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the works for any foreign territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such foreign territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the works in any foreign territory as part of an agreement for the publication, exploitation or representation of such works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B. Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the works are granted for any foreign territory. Such notice shall set forth the title of the work, the country or countries involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the foreign territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any foreign territory.

C. In the event that BMI transmits to Publisher performance royalties designated as the writer's share of performance royalties earned by any of the works in any foreign territory, Publisher shall promptly pay such royalties to the writer or writers of the works involved. If Publisher is unable for any reason to locate and make payment to any of the writers involved within six (6) months from the date of receipt, the amounts due such writers shall be returned to BMI.

FIFTEENTH:

A. Publisher agrees that Publisher, its agents, employees, representatives or affiliated companies, will not directly or indirectly during the term of this agreement:

(1) Solicit or accept payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2) Solicit or accept manuscripts from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

(3) Permit Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submit to BMI, as one of the works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher agrees that Publisher, its agents, employees or representatives will not directly or indirectly during the term of this agreement make any effort to ascertain from, or offer any inducement or consideration to, anyone, including but not limited to any broadcasting licensee of BMI or to the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C. Publisher agrees to notify BMI promptly in writing (1) of any change of firm name or address of Publisher, and (2) of any change of twenty percent (20%) or more in the ownership thereof.

D. In the event of the violation of any of the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall have the right, in its sole discretion, to terminate this agreement by giving Publisher at least thirty (30) days' notice by registered or certified mail. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH:   All disputes of any kind, nature or description whatsoever arising in connection with the terms and conditions of this agreement, or arising out of the performance thereof, or based upon an alleged breach thereof, shall be submitted to arbitration in the City, County and State of New York under the then prevailing rules of the American Arbitration Association by an arbitrator or arbitrators to be selected as follows: Each of the parties hereto shall by written notice to the other have the right to appoint one arbitrator; provided, however, that if within ten (10) days following the giving of such notice by one party the other shall not by written notice appoint another arbitrator the first arbitrator appointed shall be the sole arbitrator. If two arbitrators are so appointed, they shall thereupon appoint the third arbitrator, provided that if ten (10) days shall elapse after the appointment of the second arbitrator and the said two arbitrators are unable to agree upon the appointment of the third arbitrator then either party may in writing request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties hereto and judgment may be, but need not be, entered thereon in any court having jurisdiction. Such award shall include the fixing of the cost of arbitration, which shall be borne by the unsuccessful party.

SEVENTEENTH:   Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI shall be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

EIGHTEENTH:   Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished by Publisher in writing to BMI's Department of Publisher Administration.

NINETEENTH:   This agreement cannot be changed orally and shall be governed and construed pursuant to the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By _Elizabeth Granville_

MAITREYA MUSIC

By _[signature]_

(Sign here)

9/72

14660079002

CC: LANGELLA B-FILE

# BMI

## PUBLISHER APPLICATION



RECEIVED
JUN 23 1999
PUBLISHER ADMINISTRATION

We are delighted that you have expressed interest in affiliation as a BMI publisher. We should like to bring to your attention the fact that affiliation with BMI is likely to be of practical financial benefit to you only if you currently have some musical compositions which are being performed or are likely to be performed either publicly or on broadcast or cable media or over the Internet. If you have no such composition, please do not submit the application at this time.

**RUSH**

PLEASE NOTE:
ALL QUESTIONS MUST BE ANSWERED.
APPLICATION MUST BE SIGNED ON LAST PAGE AND RETURNED TO THE APPROPRIATE BMI OFFICE WITH A CHECK OR MONEY ORDER FOR $150 FOR INDIVIDUALLY OWNED PUBLISHING COMPANIES AND $250 FOR PARTNERSHIPS, CORPORATIONS AND LIMITED LIABILITY COMPANIES FOR THE ADMINISTRATION FEE MADE PAYABLE TO BMI. (NOTE: THIS AMOUNT IS NOT REFUNDABLE)

RECEIVED
JUL 27 1999
PUBLISHER ADMINISTRATION

1. NAME OF YOUR PROPOSED PUBLISHING COMPANY:
   (In order to eliminate confusion it is necessary to reject any name identical with, or similar to, that of an established publishing company)

   1st Choice: _____

   2nd Choice: _____ ★ Stellabella Music _____

   3rd Choice: _____

   4th Choice: _____

   5th Choice: _____

   NOTE: Once affiliation is completed, a $75.00 administration fee is required in order to process either a change of the name of your publishing company, or for a change in ownership.

2. BUSINESS ADDRESS: c/o Len Freedman Music, Inc.

   719 Lilac Drive, Santa Barbara, CA 93108

3. BUSINESS TELEPHONE: (805) 966-6999        FAX: (805) 966-0768
                        Area Code                    Area Code

4. E-MAIL ADDRESS: _____

Complete and return to BMI the enclosed W-9 form, which is used to report your Social Security Number and/or Federal tax account number for tax purposes. Non-resident aliens should request Form 1001 from BMI for completion.

## PLEASE TURN PAGE

---

FOR INTERNAL USE ONLY

☑ RETURNED 7/22
☐ RE-RECEIVED

☑ CHECK
☐ CASHIER'S CHECK
☐ MONEY ORDER 7/23
TO ACCTG: ___ 7/23

REQUEST NAME CLEARANCE:

FOR: L. Freeman (DATE)

NAME RESERVED: _____

VIA MEMO/TELEX: 7/7

Dos # - Paris#:    D5696 - 740529
Contract Date:    08/08/1999
Start Date:    01/01/1999
End Date:    12/31/2003

ENTERED
BY: AUG - 6 1999,
VERIFIED: AUG 06 1999

| JINGLES | 1 |
| TV | 2 |
| THEATRE | 3 |
| CONCERT | 4 |
| JAZZ | 5 |

**5. BUSINESS STRUCTURE (Please check one box only)**

    A. ☐ Individually owned    B. ☐ Formally organized corporation    C. ☐ Partnership    D. ☐ Formally organized limited liability company

FILL OUT ONLY THE SECTION BELOW (A, B, C, OR D) THAT CORRESPONDS
TO THE BOX CHECKED ABOVE

    A. <u>INDIVIDUALLY OWNED:</u>

Name of Individual _____    Soc. Sec. No. _____

Home Address _____

If you are now or have ever been a writer-member or writer-affiliate of BMI, ASCAP, SESAC or any foreign performing
rights licensing organization, state below the name of the organization and the period during which you were a member
or affiliate.

Name of Organization _____    Period of Affiliation _____

CAE # _____

    B. <u>FORMALLY ORGANIZED CORPORATION</u>    State of Incorporation _____
       (Complete only if corporation is now in existence)

Fed. Tax Acct. No. _____    (If not available, request form S.S. #4 from I.R.S.)

**PHOTOCOPY OF CERTIFICATE OF
INCORPORATION MUST BE SUBMITTED
WITH THIS APPLICATION**

<u>List All Stockholders</u> (If more than four, attach extra sheet)

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Percentage Of Ownership |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

<u>List All Officers</u> (If more than four, attach extra sheet)

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Office Held | Does he/she have authority to sign agreements and otherwise act on behalf of company? |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

    <u>C. PARTNERSHIP</u> (If more than four, attach extra sheet)

Fed. Tax Acct. No. ____91-1821720_____    (If not supplied, IRS requires BMI to withhold 31 percent of your earnings.)
(If not available, request form S.S. #4 from I.R.S.)

| Names of Partners | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Percentage Of Ownership | Does he/she have authority to sign agreements and otherwise act on behalf of company? |
|---|---|---|---|---|
| Guts & Grace Records, Inc | c/o Carlos & Deborah Santana | 94-4385009 | 1% | yes |
| Carlos & Deborah Santana, Trustees of the Santana | P.O. Box 3979 | | | |
| Family Trust | San Rafael, CA 94912 | 68-0370218 | 99% | |

    Partnership name is StarFaith, L.P. dba Stellabella Music

14660079003

**D. FORMALLY ORGANIZED LIMITED LIABILITY COMPANY**   State where organized _____
(Complete only if company is now in existence)

Fed. Tax Acct. No. _____ (If not available, request form S.S. #4 from I.R.S.)

### PHOTOCOPY OF ARTICLES OF ORGANIZATION
### MUST BE SUBMITTED
### WITH THIS APPLICATION

List All Members (If more than four, attach extra sheet)

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Percentage Of Ownership |
|------|------------------------|-------------------------------------|-------------------------|
|      |                        |                                     |                         |
|      |                        |                                     |                         |
|      |                        |                                     |                         |

List Manager(s) Authorized Under Articles of Organization, If Any

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Does he/she have authority to sign agreements and otherwise act on behalf of company? |
|------|------------------------|-------------------------------------|---------------------------------------------------------------------------------------|
|      |                        |                                     |                                                                                       |
|      |                        |                                     |                                                                                       |
|      |                        |                                     |                                                                                       |

**6. LIST ALL EXECUTIVE EMPLOYEES OTHER THAN OFFICERS**
   (for example, professional manager, general manager, etc.):

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Position Held |
|------|------------------------|-------------------------------------|---------------|
|      |                        |                                     |               |
|      |                        |                                     |               |
|      |                        |                                     |               |
|      |                        |                                     |               |

**7.** If any owner, stockholder, officer or executive employee has been or is connected with any record company, publishing company, songwriters' agency or any organization engaged in the solicitation, publication or exploitation of music, please give the following information:

| Name of Individual | Name of Company | If Publishing Co. is it BMI? | Position Held | Years of Association From   To |
|--------------------|-----------------|------------------------------|---------------|-------------------------------|
|                    |                 |                              |               |                               |
|                    |                 |                              |               |                               |
|                    |                 |                              |               |                               |

**COMPLETE THE ENCLOSED CLEARANCE FORM** listing one composition owned by your publishing company that has been commercially recorded, is likely to be broadcast, performed in concerts or otherwise publicly performed, and return it with the application. Please refer to the backside of the clearance form for instructions and additional information.

14660079004

8. BMI Repertoire Song Title Database Publisher Contact Information
Complete the section below only if you wish to have BMI add your contact information to BMI's website.

Publisher Name: _____ **Stellabella Music** _____

Contact Name: _____ **Len Freedman** _____ Title: _____ **Administrator** _____

Phone: _____ **(805) 966-6999** _____ Fax: _____ **(805) 966-0768** _____

Address: _____ **c/o Len Freedman Music, Inc., 719 Lilac Drive** _____

City: **Santa Barbara** _____ State: **CA** _____ Zip: **93108** _____

Email: _____

Web Page Address (URL): _____

## NOTICE

IT IS ACKNOWLEDGED THAT ANY CONTRACT CONSUMMATED BETWEEN APPLICANT AND BMI WILL BE ENTERED INTO IN RELIANCE UPON THE REPRESENTATIONS CONTAINED IN THIS APPLICATION AND THE REPRESENTATION THAT THE OWNERS, INCLUDING PARTNERS, ARE OVER THE AGE OF EIGHTEEN. THE CONTRACT WILL BE SUBJECT TO CANCELLATION IF ANY QUESTION HEREIN CONTAINED IS NOT ANSWERED FULLY AND ACCURATELY OR IF THE TRUE NAME OF EACH OWNER, STOCKHOLDER, OFFICER AND/OR EXECUTIVE EMPLOYEE IS NOT REPORTED IN QUESTION 4, 5 AND 6 HEREOF.

Date _____ **4/5/99** _____    Signature ✓ *Deborah Santana*

_____ **Deborah Santana, Partner** _____
(Please print name and title of person signing)

Is your Publishing Company currently being administered by another publishing company?  ☒ Yes    No

_____ **Len Freedman Music, Inc.** _____
Name of Administrator (please print)

_____ **Len Freedman** _____
Contact Person (please print)

_____ **719 Lilac Drive, Santa Barbara, CA 93108** _____
Address



**FORM PA**
For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGI

PAu 2-471-469

EFFECTIVE DATE OF REGISTRATION

**FEB 23 2000**

Month        Day        Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

## 1

TITLE OF THIS WORK ▼

**VICTORY IS WON**

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions

**Music**

---

## 2

**a**

NAME OF AUTHOR ▼

**Carlos Santana**

DATES OF BIRTH AND DEATH
Year Born ▼  **1947**   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶_____ **U.S.**_____
     Domiciled in▶_____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☒ No
Pseudonymous?     ☐ Yes  ☒ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼
**Music**

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶_____
     Domiciled in▶_____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☐ No
Pseudonymous?     ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶_____
     Domiciled in▶_____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?        ☐ Yes  ☐ No
Pseudonymous?     ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

## 3

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED   This information must be given in all cases.
**2000** ◀Year

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK   Complete this information ONLY if this work has been published.
Month ▶        Day ▶        Year ▶        ◀ Nation

---

## 4

See instructions before completing this space.

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

**Stellabella Music**
**c/o Len Freedman Music, Inc.**
**719 Lilac Drive, Santa Barbara, CA 93108**

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**By Contractual Agreement**

APPLICATION RECEIVED
FEB 23 2000
ONE DEPOSIT RECEIVED
FEB 23 2000
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

---

MORE ON BACK ▶   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
                 • See detailed instructions          • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of 2 pages

| EXAMINED BY | _Fm_ | FORM PA |
|---|---|---|
| CHECKED BY | | |

— CORRESPONDENCE
— Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼        Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                           Account Number ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/ZIP ▼

Stellabella Music
c/o Len Freedman Music, Inc.
719 Lilac Drive
Santa Barbara, CA 93108

Area Code and Telephone Number ▶  **(805) 966-6999**

Be sure to
give your
daytime phone
◀ number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▼

☐ author

☐ other copyright claimant

☐ owner of exclusive right(s)

☒ authorized agent of ____ **Stellabella Music**

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

**Len Freedman**                                    date ▶  **2/18/2000**

Handwritten signature (X) ▼

**8**

**MAIL CERTIFICATE TO**

Certificate
will be
mailed in
window
envelope

Name ▼

Stellabella Music
c/o Len Freedman Music, Inc.

Number/Street/Apartment Number ▼

719 Lilac Drive

City/State/ZIP ▼

Santa Barbara, CA 93108

**YOU MUST**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE**
1. Application form
2. Nonrefundable $20 filing fee
   in check or money order
   payable to Register of Copyrights
3. Deposit material

**MAIL TO**
Register of Copyrights
Library of Congress
Washington, D.C. 20559-6000

The Copyright Office
has the authority to ad-
just fees at 5-year inter-
vals, based on changes
in the Consumer Price
Index. The next adjust-
ment is due in 1996.
Please contact the
Copyright Office after
July 1995 to determine
the actual fee schedule.

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

July 1993—300,000  ♻ PRINTED ON RECYCLED PAPER

☆U.S. GOVERNMENT PRINTING OFFICE: 1993-342-582/80.017

14660079000

**BMI**

D5696      740529

AGREEMENT made on .......August 6, 1999....................... between BROADCAST MUSIC, INC. ("BMI"), a

New York corporation, whose address is 320 West 57th Street, New York, N.Y. 10019-3790 and ...STARFAITH L.P., a limited

...partnership consisting of Guts and Grace Records, Inc., a (California corporation, general....

......partner, and Carlos and Deborah Santana Family Trust, limited partner dba STELLABELLA MUSIC......

.................... ("Publisher", whose address is  c/o Len Freedman Music, Inc.

..719 Lilac Drive, Santa Barbara, CA. 93108...............................................

W I T N E S S E T H :

FIRST: The term of this agreement shall be the period from ............January 1, 1999

to...December 31, 2003................................., and continuing thereafter for additional periods of five (5) years each unless
terminated by either party at the end of such initial period or any additional period, upon notice by registered or certified mail not more
than six (6) months or less than three (3) months prior to the end of any such period.

SECOND: As used in this agreement, the word "Work" or "Works" shall mean:

A. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-
musical work) whether published or unpublished, now owned or copyrighted by Publisher or in which Publisher owns or controls performing
rights, and

B. All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-
musical work) whether published or unpublished, in which hereafter during the term Publisher acquires ownership of copyright or ownership
or control of the performing rights, from and after the date of the acquisition by Publisher of such ownership or control.

THIRD: Except as otherwise provided herein, Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for
the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform, and to license others to perform, anywhere in the
world, any part or all the Works.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the Works on electrical
transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television
or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of
synchronization (1) with motion pictures intended primarily for theatrical exhibition or (2) with programs distributed by means of syndication
to broadcasting stations, cable systems or other similar distribution outlets.

C. The non-exclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license
others to do so.

FOURTH: Notwithstanding the provisions of subparagraph A of paragraph THIRD hereof:

A. The rights granted to BMI by said subparagraph A shall not include the right to perform or license the performance of
more than one song or aria from a dramatic or dramatico-musical work which is an opera, operetta or musical show or more than five (5)
minutes from a dramatic or dramatico-musical work which is a ballet, if such performance is accompanied by the dramatic action, costumes
or scenery of that dramatic or dramatico-musical work.

B. Publisher, together with all the writers and co-publishers, if any, shall have the right jointly, by written notice to BMI,
to exclude from the grant made by subparagraph A of paragraph THIRD hereof performances of Works comprising more than thirty (30)
minutes of a dramatic or dramatico-musical work, but this right shall not apply to such performances from (1) a score originally written
for or performed as part of a theatrical or television film, (2) a score originally written for or performed as part of a radio or television
program, or (3) the original cast, sound track or similar album of a dramatic or dramatico-musical work.

C. Publisher, the writers and/or co-publishers, if any, retain the right to issue non-exclusive licenses for performances of a
Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided
that within ten (10) days of the issuance of such license BMI is given written notice thereof and a copy of the license is supplied to BMI.

FIFTH:

A. As full consideration for all rights granted to BMI hereunder and as security therefor, BMI agrees to make the following
payments to Publisher with respect to each of the Works in which BMI has performing rights:

(1) For radio and television performances of Works in the United States, its territories and possessions, BMI will pay
amounts calculated pursuant to BMI's then standard practices upon the basis of the then current performance rates generally paid by BMI
to its affiliated publishers for similar performances of similar compositions. The number of performances for which Publisher shall be
entitled to payment shall be estimated by BMI in accordance with its then current system of computing the number of such performances.

Publisher acknowledges that BMI licenses performances of the Works of its affiliates by means other than on radio
and television, but that unless and until such time as methods are adopted for inbulation of and payment for such performances, payment
will be based solely on performances in those media and locations than currently surveyed. In the event that during the term of this
agreement BMI shall establish a system of separate payment for performances by means other than radio and television, BMI shall pay
Publisher upon the basis of the then current performance rates generally paid by BMI to its other affiliated publishers for similar
performances of similar compositions.

(2) For performances of Works outside of the United States, its territories and possessions, BMI will pay to Publisher
monies received by BMI in the United States from any performing rights licensing organization which are designated by such organization
as the publisher's share of foreign performance royalties earned by any of the Works after the deduction of BMI's then current handling
charge applicable to its affiliated publishers and in accordance with BMI's then standard practices of payment for such performances.

(3) In the case of Works which, or rights in which, are owned by Publisher jointly with one or more other publishers,
the sum payable to Publisher under this subparagraph A shall be a pro rata share determined on the basis of the number of publishers,
unless BMI shall have received from Publisher a copy of an agreement or other document signed by all of the publishers providing for a
different division of payment.

B. Notwithstanding the provisions of subparagraph A of this paragraph FIFTH, BMI shall have no obligation to make
payment hereunder with respect to (1) any performance of a Work which occurs prior to the date on which BMI shall have received from

Publisher of all the material with respect to such Work referred to in subparagraph A of paragraph TENTH hereof, and in the case of foreign performances, the information referred to in subparagraph B of paragraph FOURTEENTH hereof, or (2) any performance of a Work as to which a direct license as described in subparagraph C of paragraph FOURTH hereof has been granted by Publisher, its co-publishers or the writers, or (3) any performance for which no license fees shall be collected by BMI, or (4) any performance of a Work which Publisher claims was either omitted from or miscalculated on a royalty statement and for which BMI shall not have received written notice from Publisher of such claimed omission or miscalculation within nine (9) months of the date of such statement.

SIXTH: In accordance with BMI's then current standard practices, BMI will furnish periodic statements to Publisher during each year of the term showing the monies due pursuant to subparagraph A of paragraph FIFTH hereof. Each such statement shall be accompanied by payment of the sum thereby shown to be due to Publisher, subject to all proper deductions, if any, for taxes, advances or amounts due to BMI from Publisher.

SEVENTH:

A.  Nothing in this agreement requires BMI to continue to license the Works subsequent to the termination of this agreement. In the event that BMI continues to license Publisher's interest in any Work, however, BMI shall continue to make payments to Publisher for such Work for so long as Publisher does not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payment shall be calculated pursuant to BMI's then current standard practices upon the basis of the then current performance rates generally paid by BMI to its affiliated publishers for similar performances of similar compositions. Publisher agrees to notify BMI by registered or certified mail of any grant or purported grant by Publisher directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if Publisher fails to so inform BMI thereof and BMI makes payments to Publisher for any period after the making of any such grant or purported grant, Publisher agrees to repay to BMI all amounts so paid by BMI promptly with or without demand by BMI. In addition, if BMI inquires of Publisher by registered or certified mail, addressed to Publisher's last known address, whether Publisher has made any such grant or purported grant and Publisher fails to confirm to BMI by registered or certified mail within thirty (30) days of the mailing of such inquiry that Publisher has not made any such grant or purported grant, BMI may, from and after such date, discontinue making any payments to Publisher.

B.  BMI's obligation to continue payment to Publisher after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon BMI's receipt in the United States of payments designated by foreign performing rights licensing organizations as the publisher's share of foreign performance royalties earned by the Works. Payment of such foreign royalties shall be subject to deduction of BMI's then current handling charge applicable to its affiliated publishers and shall be in accordance with BMI's then standard practices of payment for such performances.

C.  In the event that BMI has reason to believe that Publisher will receive, or is entitled to receive, or is receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of the Works during a period when such Works were licensed by BMI pursuant to this agreement, BMI shall have the right to withhold payment for such performances from Publisher until receipt of evidence satisfactory to BMI that Publisher was not or will not be so paid by such other organization. In the event that Publisher was or will be so paid or does not supply such evidence within eighteen (18) months from the date of BMI's request therefor, BMI shall be under no obligation to make any payment to Publisher for performances of such Works during such period.

EIGHTH: In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to Publisher prior to the effective date of such termination, there remains an unearned balance of advances paid to Publisher by BMI, such termination shall not be effective until the close of the calendar quarterly period during which (A) Publisher shall repay such unearned balance of advances, or (B) Publisher shall notify BMI by registered or certified mail that Publisher has received a statement rendered by BMI at its normal accounting time showing that such unearned balance of advances has been fully recouped by BMI.

NINTH:

A.  BMI shall have the right, upon written notice to Publisher, to exclude from this agreement, at any time, any Work which in BMI's opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

B.  In the case of Works which in the opinion of BMI are based on compositions in the public domain, BMI shall have the right, at any time, upon written notice to Publisher, either (1) to exclude any such Work from this agreement, or (2) to classify any such Work as entitled to receive only a stated fraction of the full credit that would otherwise be given for performances thereof.

C.  In the event that any Work is excluded from this agreement pursuant to subparagraph A or B of this paragraph NINTH, or pursuant to subparagraph C of paragraph TWELFTH hereof, all rights of BMI in such Work shall automatically revert to Publisher ten (10) days after the date of the notice of such exclusion given by BMI to Publisher. In the event that a Work is classified for less than full credit under subparagraph B(2) of this paragraph NINTH, Publisher shall have the right, by giving notice to BMI within ten (10) days after the date of BMI's notice to Publisher of the credit allocated to such Work, to terminate all rights in such Work granted to BMI herein and all such rights of BMI in such Work shall thereupon revert to Publisher.

TENTH:

A.  With respect to each of the Works which has been or shall be published or recorded commercially or synchronized with motion picture or television film or tape or which Publisher considers likely to be performed, Publisher agrees to furnish to BMI:

(1)  A completed clearance form available in blank from BMI, unless a cue sheet with respect to such Work is furnished pursuant to subparagraph A(3) of this paragraph TENTH.

(2)  If such Work is based on a composition in the public domain, a legible lead sheet or other written or printed copy of such Work setting forth the lyrics, if any, and music correctly metered; provided that with respect to all other Works, such copy need be furnished only if requested by BMI pursuant to subsection (h) of subparagraph D(2) of this paragraph TENTH.

(3)  If such Work has been or shall be synchronized with or otherwise used in connection with motion picture or television film or tape, a cue sheet showing the title, writers, publisher and nature and duration of the use of the Work in such film or tape.

B.  Publisher shall submit the material described in subparagraph A of this paragraph TENTH with respect to Works heretofore published, recorded or synchronized within ten (10) days after the execution of this agreement and with respect to any of the Works hereafter so published, recorded, synchronized or likely to be performed prior to the date of publication or release of the recording, film or tape or anticipated performance.

C.  The submission of each clearance form or cue sheet shall constitute a warranty and representation by Publisher that all of the information contained thereon is true and correct and that no performing rights in any of the Works listed thereon have been granted to or reserved by others except as specifically set forth therein.

D.  Publisher agrees:

(1)  To secure and maintain copyright protection of the Works pursuant to the Copyright Law of the United States and pursuant to the laws of such other nations of the world where such protection is afforded; and to give BMI, upon request, prompt written notice of the date and number of copyright registration and/or renewal of each Work registered in the United States Copyright Office.

(2)  At BMI's request:

(a)  To register each unpublished and published Work in the United States Copyright Office pursuant to the Copyright Law of the United States.

(b)  To obtain and deliver to BMI copies of: unpublished and published Works; copyright registration and/or renewal certificates issued by the United States Copyright Office; any agreements, assignments, instruments or documents of any kind by which Publisher obtained the right to publicly perform and/or the right to publish, co-publish or sub-publish any of the Works.

E.  Publisher agrees to give BMI prompt notice by registered or certified mail in each instance when, pursuant to the Copyright Law of the United States, (1) the rights granted to BMI by Publisher in any Work shall revert to the writer or the writer's representative, or (2) copyright protection of any Work shall terminate.

ELEVENTH:  Publisher warrants and represents that:

A.  Publisher has the right to enter into this agreement; Publisher is not bound by any prior commitments which conflict with its undertakings herein; the rights granted by Publisher to BMI herein are the sole and exclusive property of Publisher and are free from all adverse encumbrances and claims; and exercise of such rights will not constitute infringement of copyright or violation of any right of, or unfair competition with, any person, firm, corporation or association.

B.  Except with respect to Works in which the possession of performing rights by another person, firm, corporation or association is specifically set forth on a clearance form or cue sheet submitted to BMI pursuant to subparagraph A of paragraph TENTH hereof, Publisher has performing rights in each of the Works by virtue of written grants thereof to Publisher signed by the authors and composers or other owners of such Work.

TWELFTH:

A.  Publisher agrees to defend, indemnify, save and hold BMI, its licensees, the advertisers of its licensees and their respective agents, servants and employees, free and harmless from and against any and all demands, loss, damage, suits, judgments, recoveries and costs, including counsel fees, resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by Publisher to BMI hereunder; provided, however, that the obligations of Publisher under this paragraph TWELFTH shall not apply to any matter added to, or changes made in, any Work by BMI or its licensees.

B.  Upon the receipt by BMI or any of the other parties herein indemnified of any notice, demand, process, papers, writ or pleading, by which any such claim, demand, suit or proceeding is made or commenced against them, or any of them, which Publisher shall be obliged to defend hereunder, BMI shall, as soon as may be practicable, give Publisher notice thereof and deliver to Publisher such papers or true copies thereof, and BMI shall have the right to participate and direct such defense on behalf of BMI and/or its licensees by counsel of its own choice, at its own expense. Publisher agrees to cooperate with BMI in all such matters.

C.  In the event of such notification of claim or service of process on any of the parties herein indemnified, BMI shall have the right, from the date thereof, to exclude the Work with respect to which a claim is made from this agreement and/or to withhold payment of all sums which may become due pursuant to this agreement or any modification thereof until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

THIRTEENTH:  Publisher makes, constitutes and appoints BMI, or its nominee, Publisher's true and lawful attorney, irrevocably during the term hereof, in the name of BMI or that of its nominee, or in Publisher's name, or otherwise, in BMI's sole judgment, to do all acts, take all proceedings, and execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in BMI's sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by Publisher hereunder, and in recover damages in respect of or for the infringement or other violation of said rights, and in BMI's sole judgment to join Publisher and/or others in whose names the copyrights to any of the Works may stand, and to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works; provided that any action or proceeding commenced by BMI pursuant to the provisions of this paragraph THIRTEENTH shall be at its sole expense and for its sole benefit. Notwithstanding the foregoing, nothing in this paragraph THIRTEENTH requires BMI to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with BMI, who Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder. In addition, Publisher understands and agrees that the licensing by BMI of any musical compositions which Publisher claims may be infringing Publisher's Works or otherwise violating the rights granted by Publisher hereunder, shall not constitute an infringement of Publisher's Works on BMI's part.

FOURTEENTH:

A.  It is acknowledged that BMI has heretofore entered into, and may during the term of this agreement enter into, contracts with performing rights licensing organizations for the licensing of public performing rights controlled by BMI in territories outside of the United States, its territories and possessions (herein called "Foreign Territories"). Upon Publisher's written request, BMI agrees to permit Publisher to grant performing rights in any or all of the Works for any Foreign Territory for which, at the time such request is received, BMI has not entered into any such contract with a performing rights licensing organization; provided, however, that any such grant of performing rights by Publisher shall terminate at such time when BMI shall have entered into such a contract with a performing rights licensing organization covering such Foreign Territory and shall have notified Publisher thereof. Nothing herein contained, however, shall be deemed to restrict Publisher from assigning to its foreign publisher or representative the right to collect a part or all of the publishers' performance royalties earned by any or all of the Works in any Foreign Territory as part of an agreement for the publication, exploitation or representation of such Works in such territory, whether or not BMI has entered into such a contract with a performing rights licensing organization covering such territory.

B.  Publisher agrees to notify BMI promptly in writing in each instance when publication, exploitation or other rights in any or all of the Works are granted for any Foreign Territory. Such notice shall set forth the title of the Work, the Foreign Territory or Territories involved, the period of such grant, the name of the person, firm, corporation or association entitled to collect performance royalties earned in the Foreign Territory and the amount of such share. Within ten (10) days after the execution of this agreement Publisher agrees to submit to BMI, in writing, a list of all Works as to which Publisher has, prior to the effective date of this agreement, granted to any person, firm, corporation or association performing rights and/or the right to collect publisher performance royalties earned in any Foreign Territory.

FIFTEENTH:  BMI shall have the right, in its sole discretion, to terminate this agreement if:

A.  Publisher, its agents, employees, representatives or affiliated companies, directly or indirectly during the term of this agreement:

(1)  Solicits or accepts payment from or on behalf of authors for composing music for lyrics, or from or on behalf of composers for writing lyrics to music.

(2)  Solicits or accepts music and/or lyrics from composers or authors in consideration of any payments to be made by or on behalf of such composers or authors for reviewing, arranging, promotion, publication, recording or any other services connected with the exploitation of any composition.

14660079001

(3) Permits Publisher's name, or the fact of its affiliation with BMI, to be used by any other person, firm, corporation or association engaged in any of the practices described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH.

(4) Submits to BMI, as one of the Works to come within this agreement, any musical composition with respect to which any payments described in subparagraphs A(1) and A(2) of this paragraph FIFTEENTH have been made by or on behalf of a composer or author to any person, firm, corporation or association.

B. Publisher, its agents, employees or representatives directly or indirectly during the term of this agreement makes any effort to ascertain from, or offers any inducement or consideration to, anyone, including but not limited to any radio or television licensee of BMI or in the agents, employees or representatives of BMI or of any such licensee, for information regarding the time or times when any such BMI licensee is to report its performances to BMI, or to attempt in any way to manipulate performances or affect the representative character or accuracy of BMI's system of sampling or logging performances.

C. Publisher fails to notify BMI's Department of Writer/Publisher Administration promptly in writing of any change of firm name, ownership or address of Publisher.

In the event BMI exercises its right to terminate this agreement pursuant to the provisions of subparagraphs A, B or C of this paragraph FIFTEENTH, BMI shall give Publisher at least thirty (30) days' notice by registered or certified mail of such termination. In the event of such termination, no payments shall be due to Publisher pursuant to paragraph SEVENTH hereof.

SIXTEENTH:  In the event that during the term of this agreement (1) monies shall not have been earned by Publisher pursuant to paragraph FIFTH hereof for a period of two consecutive years or more, or (2) the proprietor, if Publisher is a sole proprietorship, shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail addressed to the last address furnished by Publisher in writing to BMI's Department of Writer/Publisher Administration and, in the case of the death of a sole proprietor, to the representative of said proprietor's estate, if known to BMI. In the event of such termination, no payments shall be due Publisher pursuant to paragraph SEVENTH hereof.

SEVENTEENTH:  Publisher acknowledges that the rights obtained by it pursuant to this agreement constitute rights to payment of money and that during the term BMI shall hold title to the performing rights granted to BMI hereunder. In the event that during the term Publisher shall file a petition in bankruptcy, such a petition shall be filed against Publisher, Publisher shall make an assignment for the benefit of creditors, Publisher shall consent to the appointment of a receiver or trustee for all or part of its property, Publisher shall file a petition for corporate reorganization or arrangement under the United States bankruptcy laws, or Publisher shall institute or shall have instituted against it any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, or, in the event Publisher is a partnership, all of the general partners of said partnership shall be adjudged bankrupts, BMI shall retain title to the performing rights in all Works the rights to which are granted to BMI hereunder and shall subrogate Publisher's trustee in bankruptcy or receiver and any subsequent purchasers from them to Publisher's right to payment of money for said Works in accordance with the terms and conditions of this agreement.

EIGHTEENTH:  All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows:

Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgement may be entered in New York State Supreme Court or any other court having jurisdiction.

NINETEENTH:  Publisher agrees that it shall not, without the written consent of BMI, assign any of its rights hereunder. No rights of any kind against BMI will be acquired by the assignee if any such purported assignment is made by Publisher without such written consent.

TWENTIETH:  Any notice sent to Publisher pursuant to the terms of this agreement shall be valid if addressed to Publisher at the last address furnished in writing by Publisher to BMI's Department of Writer/Publisher Administration.

TWENTY-FIRST:  This agreement constitutes the entire agreement between BMI and Publisher, cannot be changed except in a writing signed by BMI and Publisher and shall be governed and construed pursuant to the laws of the State of New York.

TWENTY-SECOND:  In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the day and year first above written.

BROADCAST MUSIC, INC.

By ............................................................

................. Assistant ................. Vice President

STELLABELLA MUSIC
.................................................................

→ By ............................................................
Deborah Santana ......... General partner
(Title of Signer) .........

4/04

14660079002

CC: LANGELLA B-FILE

# BMI

## PUBLISHER APPLICATION

**RECEIVED**
JUN 2 3 1999
PUBLISHER ADMINISTRATION

We are delighted that you have expressed interest in affiliation as a BMI publisher. We should like to bring to your attention the fact that affiliation with BMI is likely to be of practical financial benefit to you only if you currently have some musical compositions which are being performed or are likely to be performed either publicly or on broadcast or cable media or over the internet. If you have no such composition, please do not submit the application at this time.

**RUSH**

PLEASE NOTE:
ALL QUESTIONS MUST BE ANSWERED.
APPLICATION MUST BE SIGNED ON LAST PAGE AND RETURNED TO THE APPROPRIATE BMI OFFICE WITH YOUR CHECK OR MONEY ORDER FOR $150 FOR INDIVIDUALLY OWNED PUBLISHING COMPANIES AND $250 FOR PARTNERSHIPS, CORPORATIONS AND LIMITED LIABILITY COMPANIES FOR THE ADMINISTRATION FEE MADE PAYABLE TO BMI. (NOTE: THIS AMOUNT IS NOT REFUNDABLE).

**RECEIVED**
JUL 2 7 1999
PUBLISHER ADMINISTRATION

1. NAME OF YOUR PROPOSED PUBLISHING COMPANY:
   (In order to eliminate confusion it is necessary to reject any name identical with, or similar to, that of an established publishing company)

   1st Choice: _____

   2nd Choice: _____ ★ Stellabella Music

   3rd Choice: _____

   4th Choice: _____

   5th Choice: _____

   NOTE: Once affiliation is completed, a $75.00 administration fee is required in order to process either a change of the name of your publishing company, or for a change in ownership.

2. BUSINESS ADDRESS: c/o Len Freedman Music, Inc.

   719 Lilac Drive, Santa Barbara, CA 93108

3. BUSINESS TELEPHONE: (805) 966-6999          FAX: (805) 966-0768
                         Area Code                      Area Code

4. E-MAIL ADDRESS: _____

Complete and return to BMI the enclosed W-9 form, which is used to report your Social Security Number and/or Federal tax account number for tax purposes. Non-resident aliens should request Form 1001 from BMI for completion.

## PLEASE TURN PAGE

---

FOR INTERNAL USE ONLY

☑ RETURNED 7/22

☑ RE-RECEIVED

☑ CHECK
☐ CASHIER'S CHECK
☐ MONEY ORDER  7/23
TO ACCTG: _____ 7/23

REQUEST NAME CLEARANCE:
                              (DATE)
FOR: L. Freeman
NAME RESERVED: _____
VIA MEMO/TELEX: _____

Dos # - Par#:    D6696 - 740529
Contract Date:   08/06/1999
Start Date:      01/01/1999
End Date:        12/31/2003

ENTERED
BY: AUG - 6 1999,
VERIFIED: AUG 0 6 1999

| | |
|---|---|
| JINGLES | 1 |
| TV | 2 |
| THEATRE | 3 |
| CONCERT | 4 |
| JAZZ | 5 |

**5. BUSINESS STRUCTURE (Please check one box only)**

    A. ☐ Individually owned    B. ☐ Formally organized corporation    C. ☒ Partnership    D. ☐ Formally organized limited liability company

FILL OUT ONLY THE SECTION BELOW (A, B, C, OR D) THAT CORRESPONDS
TO THE BOX CHECKED ABOVE

    A. <u>INDIVIDUALLY OWNED:</u>

Name of Individual _____ Soc. Sec. No. _____

Home Address _____

If you are now or have ever been a writer-member or writer-affiliate of BMI, ASCAP, SESAC or any foreign performing rights licensing organization, state below the name of the organization and the period during which you were a member or affiliate.

Name of Organization _____ Period of Affiliation _____

CAE # _____

    B. <u>FORMALLY ORGANIZED CORPORATION</u>  State of Incorporation _____
    (Complete only if corporation is now in existence)

Fed. Tax Acct. No. _____ (If not available, request form S.S. #4 from I.R.S.)

**PHOTOCOPY OF CERTIFICATE OF
INCORPORATION MUST BE SUBMITTED
WITH THIS APPLICATION**

<u>List All Stockholders</u> (If more than four, attach extra sheet)

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Percentage Of Ownership |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

<u>List All Officers</u> (If more than four, attach extra sheet)

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Office Held | Does holder have authority to sign agreements and otherwise act on behalf of company? |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

    C. <u>PARTNERSHIP</u> (If more than four, attach extra sheet)

Fed. Tax Acct. No.   91-1821720
(If not available, request form S.S. #4 from I.R.S.)

(If not supplied, IRS requires BMI to withhold 31 percent of your earnings.

| Names of Partners | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Percentage Of Ownership | Does holder have authority to sign agreements and otherwise act on behalf of company? |
|---|---|---|---|---|
| Guts & Grace Records, Inc | c/o Carlos & Deborah Santana | 94-4385009 | 1% | yes |
| Carlos & Deborah Santana, Trustees of the Santana | P.O. Box 3979 | | | |
| Family Trust | San Rafael, CA 94912 | 68-0370218 | 99% | |

Partnership name is StarFaith, L.P. dba Stellabella Music

14660079003

**D. FORMALLY ORGANIZED LIMITED LIABILITY COMPANY**    State where organized _____
(Complete only if company is now in existence)

Fed. Tax Acct. No. _____    (If not available, request form S.S. #4 from I.R.S.)

## PHOTOCOPY OF ARTICLES OF ORGANIZATION
## MUST BE SUBMITTED
## WITH THIS APPLICATION

List All Members (If more than four, attach extra sheet)

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Percentage Of Ownership |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

List Manager(s) Authorized Under Articles of Organization, If Any

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Does he/she have authority to sign agreement and otherwise act on behalf of company? |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

6. **LIST ALL EXECUTIVE EMPLOYEES OTHER THAN OFFICERS**
(for example, professional manager, general manager, etc.):

| Name | Home Address & Zip Code | Soc. Sec. No. or Fed. Tax Acct. No. | Position Held |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

7. If any owner, stockholder, officer or executive employee has been or is connected with any record company, publishing company, songwriters' agency or any organization engaged in the solicitation, publication or exploitation of music, please give the following information:

| Name of Individual | Name of Company | If Publishing Co. is It BMI? | Position Held | Years of Association From To |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**COMPLETE THE ENCLOSED CLEARANCE FORM** listing one composition owned by your publishing company that has been commercially recorded, is likely to be broadcast, performed in concerts or otherwise publicly performed, and return it with the application. Please refer to the backside of the clearance form for instructions and additional information.

J4660079004

**8. BMI Repertoire Song Title Database Publisher Contact Information**
Complete the section below only if you wish to have BMI add your contact information to BMI's website.

Publisher Name: _____**Stellabella Music**_____

Contact Name: _____**Len Freedman**_____    Title: _____**Administrator**_____

Phone: _____**(805) 966-6999**_____    Fax: _____**(805) 966-0768**_____

Address: _____**c/o Len Freedman Music, Inc., 719 Lilac Drive**_____

City: _____**Santa Barbara**_____    State: **CA**    Zip: **93108**_____

Email: _____

Web Page Address (URL): _____

<u>NOTICE</u>

IT IS ACKNOWLEDGED THAT ANY CONTRACT CONSUMMATED BETWEEN APPLICANT AND BMI WILL BE ENTERED INTO IN RELIANCE UPON THE REPRESENTATIONS CONTAINED IN THIS APPLICATION AND THE REPRESENTATION THAT THE OWNERS, INCLUDING PARTNERS, ARE OVER THE AGE OF EIGHTEEN. THE CONTRACT WILL BE SUBJECT TO CANCELLATION IF ANY QUESTION HEREIN CONTAINED IS NOT ANSWERED FULLY AND ACCURATELY OR IF THE TRUE NAME OF EACH OWNER, STOCKHOLDER, OFFICER AND/OR EXECUTIVE EMPLOYEE IS NOT REPORTED IN QUESTION 4, 5 AND 6 HEREOF.

Date _____**4/5/99**_____    Signature _✓ *Deborah Santana*_

_____**Deborah Santana, Partner**_____
(Please print name and title of person signing)

Is your Publishing Company currently being administered by another publishing company?  ☒ Yes    No

_____**Len Freedman Music, Inc.**_____
Name of Administrator (please print)

_____**Len Freedman**_____
Contact Person (please print)

_____**719 Lilac Drive, Santa Barbara, CA 93108**_____
Address